ADRIENNE RICHARDS, *et al.*,

        Plaintiff,

v.

TITLEMAX OF SOUTH CAROLINA, INC.,
*et al.*,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

1:20-CV-00347-LCB-JLW

## PLAINTIFF KEOLIKA LITTLE'S BRIEF IN OPPOSITION TO TITLEMAX OF SOUTH CAROLINA'S MOTION TO VACATE ARBITRATION AWARD

Keolika Little ("Claimant"), through Counsel, pursuant to Local Rule 7.3(f), respectfully submits this Brief in Opposition to TitleMax of South Carolina, Inc.'s ("TitleMax") Motion (DR 137) to vacate a JAMS Arbitration Award (DR125-1; DR126-1) in her favor. The Court should deny TitleMax's motion and confirm the award.

## STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

Claimant, with others, filed suit in North Carolina state court for TitleMax's violations of North Carolina consumer lending and protection statutes. TitleMax removed this action to this Court. The Court ordered Plaintiffs' cases to binding arbitration and stayed the case. TitleMax has lost 275 of the last 279 arbitrations involving the same facts in matters ordered to arbitration by this Court. (DR 123-1 through DR123-17). TitleMax seeks again here to vacate the Award based on its ambiguous "Governing Law" provision. This Court has confirmed numerous awards

1

rejecting TitleMax's motions to vacate.[1] TitleMax presents the same repackaged arguments with new cites to a law review article and cases in other jurisdictions that do not change the analysis. Additionally, TitleMax now contends that the Arbitrator and the JAMS Appellate Panel manifestly disregarded the law by awarding punitive damages. TitleMax fails to meet the exceedingly high standard for manifest disregard.[2]

Plaintiff is a North Carolina resident. TitleMax is a car title lender that made a high interest loans to Plaintiff. TitleMax advertised to and discussed a loan with Plaintiff while she was in North Carolina. TitleMax secured its loans by placing a lien on Little's car title with the NCDMV. TitleMax charged Claimant an APR of 214%. (DN137-1, p. 2) North Carolina law allows a maximum APR of 30.0%. N.C.G.S. §53-176(a). As such, TitleMax violated the North Carolina Consumer Finance Act, N.C.G.S. §53-164, *et seq.* ("NCCFA") and the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), §75-1.1, *et seq.* The Arbitrator found by clear and convincing evidence that TitleMax's actions were willful and wanton subjecting TitleMax to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

The NCCFA applies to out-of-state car title lenders who choose to do business in North Carolina. To avoid application of the Act, loans "made elsewhere" must meet the requirement that "**all** contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing

---

[1] *See* Court dockets in *Goines, et al. v. TitleMax of Virginia, et al.*, No. 1:19-cv-00489-LCB-JLW (M.D.N.C.) and *Nicholson, et al. v. TitleMax of Virginia, Inc., et al.*, No. 1:19-cv-00490-LCB-JLW (M.D.N.C.). On page 2 of its brief, TitleMax uses the *White v. TitleMax* (4th Cir 2024) to create the impression that this Court's findings on the merits were previously wrong. As this Court knows, the 4th Circuit only addressed subject matter jurisdiction after a change in law by the Supreme Court—an issue raised by neither party before this Court at the time (since it was not the law). TitleMax's makes the leap to imply that technicality reflects an error on this Court's parts on the merits.

[2] As the Fourth Circuit has noted "in almost all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end of our analysis..." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 674 (4th Cir. 2022)

2

of documents, and delivery and receipt of funds **occur entirely outside North Carolina**." N.C.G.S. §53-190(a)(emphasis added).

The North Carolina Court of Appeals in the *AutoMoney* cases[3] held that in-state conduct like the kind TitleMax engaged in here violates the NCCFA and the NCUDTPA. The North Carolina Court of Appeals in *Smith v. AutoMoney, Inc.* held that section 53-190 reflects a fundamental public policy of North Carolina and recognized: "N.C. Gen. Stat. §53-190 aims to protect North Carolina residents from predatory lending by nonresident predatory loan corporations that infiltrate North Carolina through the contractual activities listed [in the statute]."

In connection with a car title lender's use of the NCDMV to place liens on North Carolina motor vehicle titles, the NCCOA in *Wall* held:

> Here, Defendant has attempted to avoid application of North Carolina law, and in particular here application of the NCCFA, by including a choice-of-law provision in their loan agreements and by requiring Plaintiffs to drive to South Carolina to sign the loan documents and receive the funds. However, the NCCFA expressly states the law is to be applied to loans made outside the state unless all contractual activities occur entirely outside of the state. Indeed, in this case, Plaintiffs have made specific allegations—which solely for the purpose of this appeal we treat as true—to show Defendant has conducted contractual activities within the state, rendering the NCCFA applicable. For example, Plaintiffs alleged Defendant solicited, discussed, and negotiated the terms of loan agreements, **used the DMV to perfect their security interest**, and repossessed cars in North Carolina.

(Op. ¶27)(emphasis added).

---

[3] *Hundley v. AutoMoney, Inc.*, 284 N.C.App. 378, 876 S.E.2d 765 (2022), *rev. denied*, 884 S.E.2d 737 (2023)
*Leake v. AutoMoney, Inc.*, 284 N.C.App. 389, 877 S.E.2d 22 (2022), *rev. denied*, 884 S.E.2d 738 (2023)
*Troublefield v. AutoMoney, Inc.*, 284 N.C.App. 494, 876 S.E.2d 790 (2022), *rev. denied*, 884 S.E.2d 739 (2023)
*Wall v. Automoney, Inc.*, 284 N.C.App. 514, 877 S.E.2d 37 (2022), *rev. denied*, 884 S.E.2d 739 (2023)

3

TitleMax argues the Arbitrator exceeded her authority by refusing to enforce a "Governing Law" provision TitleMax included in its loan agreements with Claimant. This defense has been squarely rejected by the North Carolina appellate courts. In *Troublefield v. AutoMoney, Inc.* the North Carolina Court of Appeals held:

> Therefore, we conclude Defendant violated N.C. Gen. Stat §53-190, and in turn, violated a fundamental public policy of North Carolina. **As such we hold the choice of law provision within Defendant's loan agreements is void as a matter of public policy** and the trial court properly denied Defendant's Rule 12(b)(6) motion. (Op. ¶41)(emphasis added)

The NCCOA in *Wall et al. v. AutoMoney, Inc.* held "the trial court did not err by declining to enforce the choice-of-law clause to bar Plaintiff's NCCFA claim." (Op. ¶28)

After reviewing and considering the parties' briefs and submissions[4], Arbitrator Love entered a Final Award in favor of Plaintiff (DR 126, Exhibit 1). The Arbitrator found that Claimant learned about TitleMax from a radio advertisement in North Carolina and then called Respondent from North Carolina. *Id.* ¶ 4 Further, "Claimant and the employee of TitleMax discussed the type of car that the Claimant owned and the mileage." *Id.* at ¶ 5. The Arbitrator found that the loan was secured by a lien on Claimant's vehicle that TitleMax filed with the North Carolina DMV. *Id.* at ¶ 7. The Arbitrator found that TitleMax repossessed Claimant's car in North Carolina and sold it. *Id.* at ¶ 13-14. Notably, the repossession and sale occurred (in September, 2019) *after* TitleMax was on notice of her claims and hundreds of other actions had been filed.

The Arbitrator, consistent with the *AutoMoney* line of cases, concluded that TitleMax violated the North Carolina Consumer Finance Act. Further, the Arbitrator in great detail examined the Governing Law provision and determined "that the choice of law provision in

---

[4] See Exhibit 3, which contains in part the evidence submitted by Plaintiff. Exhibit 4, 5 and 6 are the Memorandums submitted by Plaintiff in the arbitration

4

Claimant's loan agreement is not enforceable." *Id.* at ¶ 9-13. The Arbitrator expressly considered and rejected TitleMax's claim, now repeated here, that she exceeded her authority by not applying the contractual choice of law provision. *Id.* at ¶ 109-12. Finally, the Arbitrator determined, by clear and convincing evidence, that TitleMax's acts were willful and wanton. *Id.* at ¶ 80-92.[5]

TitleMax appealed Arbitrator Love's Final Award to a three arbitrator panel, who affirmed the award. (DN 125-1). TitleMax did not even appeal the choice of law issue it raises now to the JAMS Arbitration Panel. *Id.* p. 3. The JAMS Appellate Panel rejected the remaining arguments that TitleMax makes here, affirmed the Award, and awarded Little an additional $8,075 in attorney's fees.

## QUESTION PRESENTED

Should this Court vacate Claimant's JAMS Arbitration Award?

## ARGUMENT

### I.    Legal Standard.

TitleMax bears the burden of proof. A court must confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The party opposing the award bears the burden of proving the existence of grounds for vacating the award. *Strange v. Select Mgmt. Res.*, 1:19-CV-321, 1:19-CV-325, 1:19-CV-519 (M.D. N.C. Jun 28, 2021) (citing and quoting *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020).

"Judicial review of an arbitration award 'is among the narrowest known at law.'" *Goines, et al. v. TitleMax of Virginia, et al.*, No. 1:19-CV-489 at *3 (May 9, 2023) (citing *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016)). "Judicial review is 'severely circumscribed. .

---

[5] Arbitrator Love in her Interim Award ordered the parties at page thirty (30) to submit a brief regarding the appropriate amount of punitive damages to be awarded. TitleMax chose not to submit a brief.

5

. . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award.'" *Id.* (citing *Apex Plumbing Supply, Inc*, 142 F.3d, 188 193–94 (4th Cir. 1998)). "The court does not sit to reevaluate evidence or review mistakes of law. *Id.* (citing *Apex Plumbing* at 194). "Instead, the reviewing court asks only 'whether the arbitrators did the job they were told to do - not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Id.* (*citing Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)). "Thus, courts may vacate or modify an arbitration award only under 'limited circumstances.'" (citing *Padussis*, 842 F.3d at 339).

An award can be vacated at common law where "the award evidences a manifest disregard of the law." *Id.* (citing *Three S Del, Inc.*, 492 F.3d at 527). This high bar is reached only where (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Id.* at 3-4 (citing *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015)). "Additionally, an award will be vacated under the FAA where the arbitrator 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* at 4 (citing 9 U.S.C. § 10(a)(4)).

In *Astanza Design, LLC v. Giemme Stile, S.P.A.*, 220 F. Supp. 3d 641, 645 (M.D.N.C. 2016) Judge Schroeder recognized:

> [A]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law but proceed to disregard the same." *Upshur Coals Corp. v. United Mine Workers of Am., Dist.* 31, 933 F.2d 225, 229 (4th Cir. 1991) (citations omitted). Apart from these fundamental questions of arbitrability, courts must defer to the arbitrators as to the merits of a dispute and any procedural questions arising from them, even if they bear on the final result. *UBS Fin.*, 2016 WL 6871906, at *3. To do otherwise "would frustrate the purpose of having arbitration at all." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998).

In *Three S Delaware, Inc v. Dataquick Information Systems, Inc.*, 492 F.3d 523 (4th Cir.

2007), the 4th Circuit held:

> In evaluating whether an arbitrator has exceeded his power, we have generally recognized that "any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy." *Peoples Sec. Life Ins. Cov. Monumental Life Ins.* Co., 991 F.2d 141, 147 (4th Cir. 1993).

Not only did the Arbitrator not exceed the Arbitrator's powers, the Arbitrator reached the proper result under the *AutoMoney* cases. TitleMax is subject to North Carolina lending laws because the facts established that TitleMax purposefully entered North Carolina and engaged in contractual activities.

TitleMax cites to an Alabama Law Review Article recommending a change in the law and "proposes a structured process."[6] Sarah Rudolph Cole, *Curbing the Runaway Arbitrator in Commercial Arbitration: Making Exceeding the Powers Count*, 68 Ala. L. Rev. 179, 214 (2016). While that article is not the law, it actually supports confirmation here in this consumer setting. The author explains that her proposal to curb the runaway[7] arbitrator in the commercial setting is based on the reality that "both parties are sophisticated, of relatively equal bargaining power, and participate in the drafting of the agreement." Because that is true in the commercial setting. The author makes no arguments about the consumer setting as is present here.

## II.     The Arbitrator Did Not Exceed Her Powers.

The Arbitrator, in a well-reasoned 31 page award, weighed TitleMax's Governing Law provision and its argument that the provision controls its dispute with Claimant against both the NCCFA and the holding of the NCCOA in *Troublefield v. AutoMoney, Inc.* (DR 125-1, ¶ 9-13). The Arbitrator considered TitleMax's South Carolina choice-of-law provision and its argument

---

[6] TitleMax leaves out the part about this being the Author's proposed process.
[7] This is hardly a runaway arbitrator – 99% of Arbitrators have agreed with this one.

that South Carolina law should determine the parties' dispute, as well as its argument that the Federal Arbitration Act mandates the application of South Carolina law. (DR 126-1, ¶ 119-112). TitleMax chose not to appeal that finding to the JAMS Arbitration panel abandoning this argument nonetheless.

The North Carolina State Court has also recently again rejected TitleMax's arguments and confirmed awards as well. See *Hood v. TitleMax*, 25CV005827-400 paragraphs 18-30; *Frazier, et.al v. TitleMax*, 25CV005050-400; *Jefferies, et.al. v. TitleMax* 25CV006775-400. (Exhibit 1, May 27, 2025 attached hereto and incorporated by reference). The North Carolina Superior Court rejected the exact arguments TitleMax makes here; that the Arbitrator lacks the power to follow the law. *Id.* Arbitrator Love did her job. The Award reflects that the Arbitrator considered TitleMax's choice of law arguments and rejected them. The Arbitrator did not exceed her powers.[8]

TitleMax misstates the import of *Snipes v. TitleMax of Virginia, Inc.*, 876 S.E. 2d 864 (N.C. Ct. App. 2022). The narrow holding in *Snipes* is that an arbitrator must state in the award that he or she has considered the contractual choice-of-law provision and finds that it does not apply (for the reasons now conclusively established by the same court in the *AutoMoney* cases). "The arbitration award never considers or even mentions the Loan Agreement's Virginia choice of law provision. The arbitrator here did not construe the governing contract 'at all'." *Id.* at 872. *Snipes* is an arbitration procedure opinion. Contrary to TitleMax's presentation of *Snipes,* the *Snipes* panel did not say the arbitrator got it wrong; they said he did it wrong. *Snipes* is an arbitration procedure case and not a choice-of-law case. The NCCOA affirmed the trial court's decision to vacate the

---

[8] TitleMax cites to the South Carolina's Attorney General's position. The North Carolina Attorney General in that same case took the opposition in a lengthy memorandum explaining the history of the Act and how it protects "North Carolina's substantial interest in protecting its residents form high-cost lending." (Auto Money v. Walters, No. 7:23-cv-2952 (D.SC. DN57) (Exhibit 2).

8

arbitration award because - unlike here - the arbitrator never considered or even mentioned TitleMax's choice of law provision and not because it found the lender's choice-of-law provision controlling. The Court of Appeals vacated the trial court's dismissal of Snipes' claims and stated: "We remand for the trial court, in its discretion, to either direct a rehearing by the arbitrator or decide for itself the issues originally sent to the arbitrator." Ms. Snipes' case now remains pending[9] awaiting another arbitration. This Court has previously considered and rejected TitleMax's argument that *Snipes* requires arbitrators to enforce its South Carolina choice-of-law provision. *See* Order confirming an arbitration award in favor of TitleMax borrower Anna Shaw in *Goines, et al. v. TitleMax of Virginia, et al.*, No. 1:19-CV-489, DN386 (May 9, 2023).

TitleMax's reliance on *Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546 (7th Cir. 2008) and *Mori v. E. Side Lenders, LLC*, 2015 WL 13654184, at *3 (N.D. Ill. Mar. 24, 2015) is misplaced. Neither case is binding on this court and neither is persuasive to this situation. *Edstrom*, like *Snipes*, is an arbitration procedure case. In *Edstrom* there was no dispute that Wisconsin law applied to the parties' dispute. *Id.* at 548. The dispute, rather, was whether a particular Wisconsin insurance misrepresentation statute applied to mandate coverage under the facts of this particular case. *Id.* at 550 ("Edstrom argues that the ruling violates a Wisconsin state which provides that a misrepresentation cannot affect an insurer's obligations unless the insured 'knew or should have known that the representation was false.") The problem with the *Edstrom* arbitration award identified by the Court was:

> It is unrealistic to think that the arbitrator was even trying to interpret Wisconsin law. For though the misrepresentation statute, Wis. Stat. § 631.11(1)(b), on which Edstrom relies was argued to the arbitrator, he did not mention it in his opinion, let alone try to show that it is inapplicable because stop-loss insurance is really reinsurance.

---

[9] Snipes' matter is pending before this bench awaiting an Order sending it to Arbitration in *Taylor, et.al. v. TitleMax* (23CV408)(filed April 12, 2023).

Id. at 552-553.

Like *Snipes,* the *Edstrom* court found that the Arbitrator erred when he failed to consider the primary issue that was the subject of the Arbitration. The undersigned incorporates the arguments made about Edstrom and Mori in earlier Response briefs (including DN 128, pp. 17-20).[10] Contrary to TitleMax's claim, the Arbitrator did not exceed the Arbitrator's powers when the Arbitrator ruled for Claimant. The Court should deny TitleMax's Motion to Vacate Claimant's JAMS award.

## A. The Governing Law Clause

To prevail on its essence of the contract claim, TitleMax contends that "[t]he Loan Agreement contains an unambiguous, valid, and enforceable choice of law provision confirming that South Carolina law governs the loan terms." TitleMax offers no support for this claim. Judge R. Stuart Albright in *Hood, Frazier* and *Jefferies,* discussed *supra,* found to the contrary:

> The Governing Law provision, read in the context of the entire Motor Vehicle Title Loan Agreement, including Paragraph 24's statement that "[i]f the parties use an arbitration company such as JAMS, that company's consumer rules will apply" ***either does not apply to Plaintiffs' statutory claims or is ambiguous.***

*Id.* (emphasis added).

Even if the "Governing Law" provision were not void under the law in *Wall v. AutoMoney,* it does not cover Claimant's claims in the first instance. The "Governing Law" (DN137-1, p. 5) provision provides:

> This Note and the Loan involved interstate commerce. South Carolina law governs this Note, but the Federal Arbitration Act governs the Waiver of Jury Trial and Arbitration Clause in Section 24.

---

[10] In a string cite, TitleMax also referenced *Capstone Building Corp v. Mid-Atlantic Mechanical,* 08CV1157 (N.D.Alab. Nov. 12, 2008). That was a contract dispute in the commercial setting. There were no statutory tort or extracontractual claims. Nor was there any caselaw cited in that setting in Alabama or any other applicable state that set aside the choice of law provision as unenforceable.

The Arbitrator's award was not based on any dispute over the Note. Rather, the Award was based upon TitleMax's violations of North Carolina law.[11] The definition of "Dispute" in the Waiver of Jury Trial and Arbitration Clause (DN137-1, p. 5) provides that there are numerous other types of disputes other than disputes over "the Loan Agreement or "the Loan" that could arise between the parties and are subject to arbitration:

> In this Clause, "Dispute" has a broad meaning. "Dispute" includes all claims and disagreements related to my application, this Note, the Vehicle, the Loan, or my dealings with Lender. It includes claims and disagreements about any prior applications and agreements. It includes extensions, renewals, refinancings, and payment plans. It includes claims related to collections, privacy, and customer information. It includes claims and disagreements that usually would be resolved in court. "Dispute" also includes claims and disagreements I have with Related Parties.

TitleMax could have drafted a governing law provision that applied to all "Disputes" as that term is defined in the Loan Agreement. Instead, the Governing Law provision is limited to only the "Note" which is a small subset of "Dispute" and was not at issue in Claimant's arbitration. Any ambiguity in this TitleMax-drafted provision must be construed against TitleMax. "[T]he language of the arbitration clause should be strictly construed against the drafter of the clause." *Harbour Point v. Djf Enterprises*, 688 S.E.2d 47, 201 N.C. App. 720 (N.C. App. 2010).

The arbitration clause expressly provides that the JAMS consumer rules apply: "If the parties use an arbitration company such as JAMS, that company's consumer arbitration rules will apply." (DN137-1, p. 6) The JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness provide at No. 3: "Remedies that would otherwise be

---

[11] This Court has previously rejected similar claims to vacate an arbitration award on the basis of a choice of law provision, noting as one of several reasons for confirmation that the "claims were for violations of North Carolina statutes, not for breach of contract..." *Strange v. Select Mgmt. Res.*, 1:19-CV-321, 1:19-CV-325, 1:19-CV-519 (M.D.N.C. Jun 28, 2021 D.R. 139) Judge Eagles in that case also rejects TitleMax's view here of the standard in federal court holding that "arbitrators are not required to explain their reasoning" and "justifiable ground[s[ for the decision can be inferred from the record." *Id.* at page 7. (internal citations omitted)

11

available to the consumer under applicable[12] federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." (DN123-16) Since all "Disputes" were required to be brought in arbitration, all remedies available to Claimant in Court must remain available in arbitration. What TitleMax now seeks is a different result in arbitration than would otherwise be available to Plaintiff in court. JAMS rules specifically prevent a business from drafting around its liability in this fashion through forced arbitration. TitleMax chose here to incorporate those JAMS rules into its arbitration agreement.

TitleMax has relied, for the first time in replies opposing confirmation of other awards, on JAMS Comprehensive Rule 24(c) stating: "In determining the merits of the dispute, the Arbitrator shall be guided by the Rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator shall be guided by the rules of law and equity that he or she deems to be most appropriate." TitleMax fails to address however, JAMS Comprehensive Rule 4, which provides: "If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rules will be affected." Here, N.C. Gen. Stat. § 53-190 and the *AutoMoney* cases were applicable law that the Arbitrator determined applied invalidating any choice of law provision in this context. Therefore, the Arbitrator correctly determined that the Governing Law provision did not apply.[13]

---

12 North Carolina, Federal, and any other State's Applicable law must remain in place and cannot be contracted around. It is up to the Arbitrator to determine whether one or more of the applicable laws apply to various aspects of the case.

[13] To the extent that TitleMax contends that the Arbitrator erred by determining that North Carolina law applies vis-à-vis N.C. Gen. Stat. § 53-190 and the *AutoMoney* cases, that legal determination by the arbitrator should be reviewed under the manifest disregard of law standard, discussed *infra*. This Court has repeatedly rejected TitleMax's motions to vacate on that basis.

The bar for an arbitrator's award drawing its essence from a contract is low; the arbitrator need only be " 'arguably construing or applying the contract. '" See *Eastern Associated Coal v. United Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 466 (2000)(explaining as long as the arbitrator is doing that, "the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L. Ed. 2d 286 (1987) ); see also *Oxford Health Plans*, 569 U.S. at 573, 133 S.Ct. at 2071, 186 L. Ed. 2d at 122 ("Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties 'contract correctly, but whether he construed it at all.").

### III. The Arbitrators did not manifestly disregard the law.

"To establish manifest disregard, a party must demonstrate: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 669-70 (4th Cir. 2022) (internal quotations omitted). "To demonstrate that 'the disputed legal principle is clearly defined and is not subject to reasonable debate, ICON had to present to the arbitrators 'binding precedent requiring a contrary result...'" *Warfield* at 670 (internal quotations omitted). TitleMax has presented no such binding precedent. In *Warfield*, the Fourth Circuit reversed an order vacating an award. The party seeking vacatur argued that Plaintiff's arbitration award for wrongful termination without cause must be vacated because North Carolina is an "at-will" employment state. The Fourth Circuit reinstated the award because the employee "cited cases holding that the presence of an arbitrability clause governing an employment dispute implies for-cause termination protections notwithstanding a state law at-will doctrine to the contrary." *Id.* at 670. The Court held that it is not the Court's role to determine who is correct on the disputed legal issue. "We

13

have previously explained that in the absence of clearly on-point and controlling precedent, the fact that courts disagree on a particular legal question weighs against second-guessing an arbitrator's award." *Id*.

TitleMax's arguments do not come close to constituting "binding precedent requiring a different result." TitleMax relies on *Oestreicher v. American National Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976) to claim that Claimant must plead and prove a cause of action involving an identifiable tort to support punitive damages because punitive damages cannot be a stand-alone cause of action. This is no longer the law in North Carolina. *Oestreicher* predates Chapter 1D which was adopted in 1995 (the current North Carolina punitive damage law). Claimant's punitive damages claim is based upon TitleMax's willful and wanton violations of North Carolina law. Chapter 1D now expressly provides that punitive damages can be awarded for willful or wanton conduct (N.C. Gen. Stat. § 1D-15). Even if it applied, the North Carolina Supreme Court in *Oestreicher* reversed a trial court holding that in a breach of contract case that had a claim with "tort overtones" cannot support a claim for punitive damages. The Court held that "the better rule would require that defendant be punished by permitting plaintiff to recover punitive damages." 225 S.E.2d at 809.

TitleMax also relies on *Doughty v. Atlantic & North Carolina Railroad*, 78 N.C. 22 (1878) to argue that a claim under the North Carolina Consumer Finance Act is an "action in contract" and therefore cannot support an award of punitive damages. This likewise misses the mark. The Court in *Doughty,* applying civil procedure doctrine that has long since been abandoned, affirmed dismissal on the grounds that an action for a penalty is an "action on contract" and cannot be joined to a tort claim. *Id.* The *Doughty* court did not address the Consumer Finance Act (since it did not exist in 1878) or usury at all. Claimant's claims here are not actions to recover a penalty. The

14

NCCFA does not prescribe a monetary penalty. Rather N.C. Gen. Stat. § 53-166(d) declares unlawful loans void and bars collection on those loans. When TitleMax collected on the loans anyway, it damaged Claimant. Claimant sought, and was awarded damages, not a penalty.

*Commercial Finance Co. v. Holder*, 235 N.C. 96, 68 S.E.2d. 794 (1952) likewise deals with civil procedure as it existed prior to the adoption of the North Carolina Rules of Civil Procedure, and not to whether a claim for violation of the North Carolina Consumer Finance Act can form a basis for punitive damages. The categorization of claims for a civil penalty as being made "on a contract" by *Doughty* and its progeny was for jurisdictional purposes, not for determining whether the claims can support punitive damages. *Williams v. Gibson*, 232 N.C. 133, 59 S.E.2d 602 (N.C. 1950) (Holding "[a]ctions for civil penalties are assimilated to actions founded on contracts for jurisdictional purposes in this State.").

TitleMax conflates jurisdictional categorization of claims as being "actions in contract" with the N.C. Gen. Stat. § 1D-15 prohibition that "[p]unitive damages shall not be awarded against a person solely for breach of contract." Even if Claimant's claims would have been categorized in 1950 (when the NCCFA did not even exist) as *actions in contract* for jurisdictional purposes, that is irrelevant under Chapter 1D. Claimant's claims are not claims for breach of contract (and certainly not "*solely* for breach of contract"). There is no authority that statutory claims that happen to relate to a contract—but do not allege breach of contract, solely or otherwise—cannot form the basis for punitive damages. *Oestreicher, Holder* and the other authorities cited by TitleMax, all of which predate Chapter 1D, to the extent that are applicable at all, fall far short of "binding precedent requiring a contrary result." *Warfield.*

TitleMax next argues that the Arbitrator manifestly disregarded the law by "imposing impermissible double punishment on TitleMax." Not so. The only election of remedies that is

required is set forth in N.C. Gen. Stat. § 1D-20: "A Claimant must elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages." The Arbitrator correctly required Little to make that election between treble damages pursuant to N.C. Gen. Stat. § 75-16 and punitive damages. The reality is that a drunk driver who continues to injure others can be punished for punitive damages each time he or she drives drunk and injures someone else. There is no insulation for additional repeated offenses merely because he or she has had punitive damages awarded against them once. Also, it is noteworthy that in determining the amount of punitive damages the North Carolina legislature specifically provides in 1D-35(g) that the "existence and frequency of any similar past conduct by the defendant" is relevant. TitleMax does not like North Carolina law. Its answer is to convince the North Carolina legislature to change it or to stop breaking it.

Further, the Arbitrator awarded compensatory damages under Chapter 53, not a penalty. North Carolina courts have determined that amounts awarded pursuant to N.C. Gen. Stat. § 53-166(d) are damages. (*Poe*, (DN93-8)) Numerous JAMS Panels have rejected this argument. (*Flowers* (DN93-5), *Livingston* (DN93-6), *LeGrand* (DN93-7), *Jefferies* (Exhibit 2). Each Panel determined that TitleMax relies upon cases that predate the Chapter 1D and do not have anything to do with the Consumer Finance Act. At a minimum, cases that predate[14] the statutorily created remedies at issue certainly do not represent "binding precedent requiring a contrary result." Indeed, the North Carolina Superior Court reached this precise result (*Okafor* (DN93-9)) and that authority was provided to the Arbitrator.

---

[14] *Barnard v. Rowland*, 132 N.C.App. 416, 424, 512 S.E.2d 458, 464-65 (1999) was decided in 1999; however, the cause of action accrued and the civil action was filed in 1995, making the new law inapplicable.

16

Neither *Jones v. Georgia-Pac. Corp.*, 15 N.C. App. 515 (1972) nor *Shavitz v. City of High Point*, 177 N.C. App. 465 (2006) address the interplay of damages under the NCCFA and an award of punitive damages. *Jones*, which does not address punitive damages, speaks to a general rule about strict construction of statutes. However, the in *Wall v. AutoMoney* the Court specifically noted: "[i]t is the intent of the General Assembly that [the NCCFA] should be construed broadly to prohibit illicit lending schemes and to clarify the devices, subterfuges, and pretenses that are prohibited..." *Wall v. Automoney*, Inc., 284 N.C.App. 514, 877 S.E.2d 37, 48-49 (N.C. App. 2022). *Shavitz*, which TitleMax cites for a definition of a penalty, describes a penalty as "punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party." *Shavitz* 630 S.E.2d at 11. Here, the damages awarded under Chapter 53 were precisely to compensate Little for payments TitleMax unlawfully collected, and the proceeds of sale of her vehicle they unlawfully took. The damages compensated Little for what TitleMax took from her in violation of N.C. Gen. Stat. § 53-166(d).

*Russell v. Taylor,* 37 N.C. App. 520 (1978) and *Huberth v. Holly*, 120 N.C. App. 348 (1995) do not support TitleMax's claim of manifest disregard of the law either. Both are pre-Chapter 1D cases that deal with the question of statutory authorization for punitive damages. In *Russell*, the Court determined that the statute under which Plaintiff sought punitive damages—G.S. 99A-1— did not authorize the recovery of punitive damages under the facts of that case. *Russell*, 37 N.C. App. 527. Similarly, in *Huberth* the court found a similar lack of statutory authorization where a Plaintiff sough punitive damages for violation of N.C.G.S. § 113A-66(a)(3). *Huberth* 120 N.C. App. at 355 (note however, that the Court affirmed punitive damages on an alternate basis, holding: "Punitive damages are in the discretion of the fact finder and may be awarded 'where the wrong is done wilfully or under circumstances of rudeness, oppression or in a manner which evinces a

17

reckless and wanton disregard of the litigant's rights.") *Id.* Here, Little sought punitive damages under Chapter 1D, which expressly provides statutory authorization for punitive damages upon a showing of "willful or wanton conduct." N.C. Gen. Stat. § 1D-15. Therefore punitive damages here are authorized by statute. At a minimum, TitleMax's authorities fall well short of establishing binding precedent requiring a different result

Lastly, TitleMax contends that the punitive damage award should be vacated or reduced because it is excessive. Again, TitleMax fails to present "binding precedent requiring a contrary result." No such authority exists. To the contrary, the Fourth Circuit has held:

> Punitive damages awards that exceed a single digit ratio when compared to compensatory damages generally do present constitutional problems. The Supreme Court has long recognized that greater ratios may comport with due process, however, when reprehensible conduct results "'in only a small amount of economic damages.'" State Farm, 538 U.S. at 425, 123 S.Ct. 1513 (quoting Gore, 517 U.S. at 582, 116 S.Ct. 1589).

> Our sister circuits agree that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount "would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364-65 (11th Cir.2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); s*ee also Abner v. Kan. City S. R.R.*, 513 F.3d 154, 165 (5th Cir.2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir.2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir.1996) (rejecting ratio analysis because "the compensatory award here was nominal, [so] any appreciable exemplary award would produce a ratio that would appear excessive by this measure"). Thus, we do not rely upon the challenged ratio to foreclose the punitive damages award here.

*Saunders v. Branch Banking and Trust Co. of Va*, 526 F.3d 142, 154 (4th Cir. 2008).

The *Saunders* court affirmed a punitive damage award with an 80:1 ratio with compensatory damages: "[w]e also conclude that a smaller award would not serve as a meaningful deterrent to BB&T. As the court noted in *Bach*, 'a punitive damages award must remain of

18

sufficient size to achieve the twin purposes of punishment and deterrence.'..." *Saunders* at 154 (citing with approval *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338-39 (11th Cir.1999) (allowing $4.35 million punitive damages award with a 100:1 ratio "because compensatory damages are quite small and a bigger award is needed to attract the attention of a large corporation" (quotations and alterations omitted)). *Id.*[15] These punitive damage ratios affirmed by the Fourth Circuit did not involve arbitrations, so they were reviewed on a more exacting standard than the "manifest disregard" standard here. Given that the 4th Circuit has affirmed a punitive award with an 80:1 ratio, and cited approvingly to a 100:1 ratio, there certainly is no "binding precedent requiring a contrary result" here, where the ratio of compensatory damages—$2,353—to punitive damages—$250,000—is a similar 106:1 ratio.

## CONCLUSION

Claimant respectfully requests that the Court deny TitleMax's Motion to Vacate, Confirm the Award and enter judgment against TitleMax.

This is the 2nd day of June, 2025.

/s/ *Andrew H. Brown*
N.C. State Bar No. 28450
Attorney for Claimant

**FOR THE FIRM:**

BROWN, FAUCHER, PERALDO & BENSON, P.L.L.C.
822 North Elm Street, Suite 200
Greensboro, N.C. 27401
(336) 478-6000 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

---

[15] Further, as the JAMS Arbitration panel pointed out in this case: "North Carolina has capped punitive damages, thus providing a guardrail against runaway or excessive punitive awards." DN 126-1 at p.8

19

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing Brief complies with the word count limits set forth in

Local Rule 7.3(d)(1).

*/s/ Andrew H. Brown*
N.C. State Bar No. 28450
Attorney for Claimant

**FOR THE FIRM:**

BROWN, FAUCHER, PERALDO & BENSON, P.L.L.C.
822 North Elm Street, Suite 200
Greensboro, N.C. 27401
(336) 478-6000 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

20