# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADRIENNE RICHARDS, et al.,    )
    )
    Plaintiffs/Counter Defendants,    )
    )
v.    )
    )    1:20-cv-00347-LCB-JLW
    )
TITLEMAX OF SOUTH CAROLINA, et al.,    )
    )
    Defendants/Counter Claimants.    )

## <u>SHIRRELL BALDWIN'S OPPOSITION TO TITLEMAX'S MOTION TO VACATE</u>

NOW COMES Shirrell Baldwin, through counsel and pursuant to Local Rule 7.3(f), and respectfully submits this Brief in Opposition to TitleMax's Motion to Vacate (DN 164).

## <u>STATEMENT OF THE CASE AND STATEMENT OF THE FACTS</u>

Baldwin, with others, filed suit in North Carolina asserting statutory tort claims under North Carolina's Consumer Finance Act ("NCCFA"). The Act applies to lenders who enter North Carolina in conjunction with or to enforce a loan with an interest rate higher than 30% APR. N.C.G.S. § 53-190 entitled "Loans made elsewhere." Making a high-interest loan in South Carolina does not create liability—entering North Carolina, including purposely availing itself of the North Carolina legal system (through the North Carolina DMV or taking a car in North Carolina) does. *Wall v. Automoney, Inc.,* 284 N.C.App. 514, 526, 877 S.E.2d 37 (2022).

TitleMax charged Baldwin 156% and 179% APR on his loans. (DN 156-1; 156-2). The Ocotber 13, 2015 Loan Agreement contained an Arbitration Provision that covers "Disputes"— defined in the Agreement:

> For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes,

1

or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into this Loan Agreement, any past agreement or agreements between you and us, and/or any renewal of this Loan agreement; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; **(e) all claims based upon a violation of any state or federal constitution, statute or regulation**; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you. (emphasis added).

DN 156-1, p. 3.

The "Governing Law" provision does not apply to all "Disputes." It states: "This Agreement shall be governed by the laws of the State of Virginia, except that the Waiver of Jury Trial and Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16("FAA"). DN 156-1, p. 3.

The July 20, 2018 Loan Agreement contained an Arbitration Provision that covers "Disputes"— defined in the Agreement:

In this Clause, "*Dispute*" has a broad meaning. "*Dispute*" includes all claims and disagreement related to my application, this Note, the Vehicle, the Loan, or my dealings with Lender.

DN 165-2, ¶ 24.

2

The "Governing Law" provision does not apply to all "Disputes." It states: "This Note and the Loan involve interstate commerce. Virginia law governs this Note, but the Federal Arbitration Act governs the Waiver of Jury Trial and Arbitration Clause in Section 24." DN 165-2, ¶ 22.

Baldwin's statutory tort claims were ordered to Arbitration. (Text Order, July 20, 2020). Arbitrator Patricia Thompson entered Scheduling Order No. 1. (Exhibit 1). The Order stated that "Claimant contends North Carolina substantive law applies. Respondent contends Virginia substantive law applies." (Exhibit 1, ¶ 5.d.). The Order also provided that the arbitration was subject to the JAMS Comprehensive Rules and Procedures and the JAMS Consumer Arbitration Standards of Procedural Fairness. (Exhibit 1, ¶¶ 5.a. & 5.b.). JAMS also served on the parties a "Notice of Consumer Minimum Standards" that "[t]he Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing." (Exhibit 2). JAMS Minimum Standards for Arbitration Procedures No. 3 states: "Remedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court."

After briefing, Thompson entered Interim (DN 165-3) and Final Awards (DN 165-4). After a lengthy choice-of-law analysis, the Arbitrator joined hundreds of Arbitrators (including a dozen[1] retired federal judges) concluding the "Governing Law" provision does not apply to Plaintiff's claims and that North Carolina law applies. (DN 165-3, pp 23-29). TitleMax moves to vacate the award under the same basis it argued to the Arbitrator.

## **QUESTION PRESENTED**

---

[1] A chart showing retired Federal Judges who have ruled against TitleMax on this issue, with citations to Awards, is attached as Exhibit 3.

3

Should this Court vacate the Arbitration Award?

**ARGUMENT**

**I.      Legal Standard.**

A court must confirm the Award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The party opposing the award bears the burden. *Strange v. Select Mgmt. Res.*, 1:19-CV-321, (M.D.N.C. Jun 28, 2021) (citing and quoting *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020)).

"Judicial review of an arbitration award 'is among the narrowest known at law.'" *Goines, et al. v. TitleMax of Va., et al.,* No. 1:19-CV-489 at *3 (May 9, 2023) (citing *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016)). "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award. Instead, the reviewing court asks only 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Id.* (*citing Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)).

Vacatur is available where "the award evidences a manifest disregard of the law." *Id.* (citing *Three S Del, Inc.*, 492 F.3d at 527).  This requires: (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Id.* at 3-4 (citing *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015)).  "Additionally, an award will be vacated under the FAA where the arbitrator 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* at 4 (citing 9 U.S.C. § 10(a)(4)).

In *Three S Delaware, Inc.*, the 4th Circuit held:

> In evaluating whether an arbitrator has exceeded his power, we have generally recognized that any doubts concerning the scope of arbitrable issues as well as any

4

doubts concerning the scope of the arbitrators' remedial authority, are to be re-solved in favor of the arbitrators' authority as a matter of federal law and policy.

*Id*. at 527 (internal citations and quotations omitted).

The Arbitrator did not exceed her powers. She determined the Governing Law provision did not apply to the claims, and the facts established that TitleMax entered North Carolina and engaged in contractual activities, triggering the NCCFA and making the Governing Law Provision unenforceable.

## II. TitleMax Waived Its Claim That the Arbitrator Exceeded Her Powers.

TitleMax submitted the choice-of-law question to arbitration. "When a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Pilgrim's Pride Corp. v. Diaz*, 5:22-cv-04413-JDA, p.12 (D.S.C. Mar 11, 2024) (DN 123-3)(quoting *Env't Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 606 (7th Cir. 2008) (internal quotation marks omitted). *Pilgrim's Pride* concerned whether an arbitration clause permitted class arbitration. The Arbitrator determined the agreement permitted class arbitration; defendant argued "the Award should be vacated because (1) the arbitrator exceeded his powers, (2) the Award evidences a manifest disregard of the law, and (3) the Award fails to draw its essence from the Agreement." *Id*. at 11. "It was only after the arbitrator issued a decision that PPC did not agree with that PPC argued, for the first time in the instant Petition, that class arbitrability was an issue for the Court rather than the arbitrator in the first instance. But PPC 'simply cannot wait until it receives a decision with which it disagrees before challenging the arbitrator's authority.'" *Id.* at 13 (citing *Richmond, Fredericksburg & Potomac Ry. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 280 (4th Cir. 1992) (reversing vacatur of arbitration award)).

In *Richmond* a union and railroad submitted to arbitration "whether the railroad could make unilateral severance offers to its clerical employees." *Id*. at 277. The arbitrator reviewed the agreement between the parties and caselaw relating to the Railway Labor Act ("RLA"), finding for the union. *Id.* at 277-78. The railroad sought vacatur. *Id*. The District Court agreed, "holding that the arbitrator exceeded the scope of the parties' submission in basing his award on the requirements of the RLA and suggesting that the arbitrator's legal analysis was flawed." *Id.* The Fourth Circuit reversed. *Id.* at 279-80.

> In this case, RF & P and TCU submitted to the arbitrator the broad issue of "whether the RF & P can unilaterally separate employees without an agreement with TCU." The parties in no way confined the arbitrator's authority to an examination of the collective bargaining agreement. In so doing, the parties made the arbitrator the "final judge" on all questions that might arise in the disposition of the dispute….

> *Id*. at 279-80.

*Richmond* rejected the "conclusion that the arbitrator lacked the authority to consider federal case law in arriving at his decision." *Id.* at 278. "The Court has recognized that the limits of an arbitrator's authority are defined by the terms of the parties' own submission." *Id*. at 279. "We know of no statutory basis for any sort of rule that would require arbitrators to remain willfully ignorant of the governing statutes and case law." *Id.* The parties did not limit the Arbitrator in deciding that issue to only the "Governing Law" provision. The parties expressly told the Arbitrator there was a dispute about the applicable substantive law and asked her to decide it. (Exhibit 1, ¶ 5.d.).

### III. The Arbitrator Did Not Exceed Her Authority.

The "essence of the contract" falls under the FAA provision allowing for vacatur where an arbitrator "exceeds their powers," 9 U.S.C. § 10(a)(4). The standard under 9 U.S.C. § 10(a)(4) is:

6

> A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error." *Oxford Health Plans*, 569 U.S. at 569 (cleaned up). Rather, "[b]ecause the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's review of its (de)merits." *Id.* (internal quotation marks omitted). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (alterations in original)….Rather, "[a]n arbitration award fails to draw its essence from the agreement only when the result is not rationally inferable from the contract." *Id.* (internal quotation marks omitted).

*Pilgrim's Pride* at 14.

The parties expressly told the Arbitrator that there was a dispute about the applicable substantive law. (Ex. 1. ¶ 5.d.). Nothing in the contract instructs the Arbitrator to apply law differently than it would be applied in Court. *Hall St. Assocs. L.L.C., v. Mattel, Inc.*, 552 U.S. 576 (2008) held that the parties cannot lower the standard of review for the Court under the FAA to provide for *de novo* review of questions of law. Baldwin and TitleMax did not direct "the arbitrator to apply a particular state's law." To the contrary, the parties expressly told the Arbitrator that "[c]laimant contends North Carolina law applies. Respondent contends South Carolina law applies."[2] Exhibit 1, ¶ 3.

The Arbitrator conducted a lengthy choice-of-law analysis, determining that North Carolina Law applies. DN 165-3, p. 23-29. None of the cases relied on by TitleMax[3] are in the context of such a narrow, arguably unenforceable Governing Law provision. Because this matter was referred to arbitration from federal court in North Carolina, the Arbitrator determined: "If

---

[2] The Governing Law provision can hardly be called a "direction" to the Arbitrator in the first instance. It is not in the Arbitration Provision, but in a separate section of the Loan Agreement, and by its terms applies only to the "Note". DN 165-2, ¶ 22.

[3] TitleMax continues to add new cases to each Reply—unfortunately leaving the Court to pull the case and identify the distinction.

7

this dispute were still in litigation, that federal court, exercising its diversity jurisdiction over these state law claims, would apply the choice of law rules of the forum state, i.e., North Carolina." (DN 165-3, p. 27). The Arbitrator found:

> Having already found that TitleMax has conducted such [activities that trigger 53-190(a)], the undersigned will follow the precedent of the North Carolina courts by invalidating the Virginia choice of law provisions in Claimant's loan agreements.

DN 165-3, p. 29.

Rule 24(c) of the JAMS Comprehensive Rules[4] states, "[i]n determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator shall be guided by the rules of law and equity that he or she deems to be most appropriate." The parties expressly stated there was no agreement as to applicable substantive law. The Arbitrator was guided by the rules of law and equity that she deemed most appropriate. The question is whether the arbitrator was "even arguably construing the agreement between the parties." *Pilgrim's Pride* at 14. Any dispute about whether the Arbitrator had the authority to enter the award must be resolved in favor of confirmation. Arbitrator Thompson did not apply "her personal notions of right and wrong," nor do her "words manifest an infidelity to the agreement." She applied the statutes under which Claimant brought his claims and determined that the Governing Law provisions did not apply, citing the North Carolina Court of Appeals.

This Court and NC State Courts have rejected TitleMax's argument that an Arbitrator exceeded his authority in these circumstances. *Goines, et al. v. TitleMax of Va., et al.,* No. 1:19-

---

[4] The JAMS Comprehensive Rules are attached as Exhibit 4. And see Rule 4: "If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected."

CV-489, DN386, at 4-7 (May 9, 2023) (DN 123-6); *Hood v. TitleMax*, 25CV005827-400 para-graphs 18-30; *Frazier, et.al v. TitleMax*, 25CV005050-400; *Jefferies, et.al. v. TitleMax* 25CV006775-400. DN 148-1. *See* e.g., *Jefferies* ¶¶ 19-39. TitleMax's reliance on contrary out-of-Circuit authority fails. The 7th Circuit in *Bem I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002), denying a motion to vacate, imagines the following situation:

> [A]lthough the arbitration clause directs the arbitrators to apply the law of a spec-ified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award.

*Id*. at 554. That is not analogous to the situation here where the arbitration clause was silent on state law and the Arbitrator had a sound basis to apply North Carolina law pursuant to *Wall v. AutoMoney* and N.C. Gen. Stat. § 53-190. Similarly, *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128 (9th Cir. 2003) is another case where there was no dispute—or apparent basis as here—to apply the law of a different state; the Court nevertheless confirmed an award, stating "an arbitration award should be confirmed unless the arbitrators could not have rendered the same award without manifestly disregarding the governing law." *Id.* at 1134. Arbitrator Thompson did not "manifestly disregard" the law.[5] Finally, TitleMax relies on *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002), citing to Justice Thomas' opinion concurring in judgment. *Id.* at 87. Justice Thomas actually wrote "we held that under the Federal Arbitration Act courts must enforce private agreements to arbitrate just as they would ordinary contracts…." *Id.* There is nothing special about a Governing Law provision that happens to be in the same contract as an arbitration provision. It is only as enforceable as any other contract.

---

[5] The standard for "manifest disregard" is discussed in Section V.

9

Case 1:20-cv-00347-LAF-JEP    Document 177    Filed 07/10/25    Page 9 of 21

**A.  _Snipes_, _Edstrom_ and _Mori_ Do Not Support TitleMax.**

_Snipes v. TitleMax of Virginia, Inc._, 876 S.E. 2d 864 (N.C. App. 2022) did not require the arbitrator to rule in TitleMax's favor.  The narrow holding in _Snipes_ is that an arbitrator must state in the award that he or she has considered the contractual choice-of-law provision and finds that it does not apply (for the reasons now conclusively established by the same court in the _Auto-Money_ cases).

TitleMax's reliance on _Edstrom Indus., Inc. v. Companion Life Ins. Co.,_ 516 F.3d 546 (7th Cir. 2008) and _Mori v. E. Side Lenders, LLC_, 2015 WL 13654184, at *3 (N.D. Ill. Mar. 24, 2015) is misplaced.  Neither are binding.  _Edstrom_, like _Snipes_, is an arbitration procedure case.  In _Edstrom_, there was no dispute that Wisconsin law applied to the parties' dispute.  _Id._ at 548.   The dispute was whether a Wisconsin insurance misrepresentation statute applied.  _Id._ at 550.

_Edstrom_ determined the Arbitrator erred when he failed to consider the statute.[6]  The court vacated the award and remanded to the arbitrator.  _Id._ at 553.  Here, there was no failure of the Arbitrator to consider the "Governing Law" provision.

The _Mori_ Court granted an "<u>unopposed</u>" motion to confirm.[7]  Arbitrator Thomas Rakow-ski faced the question of whether a Delaware payday lender was subject to the Illinois Payday Loan Reform Act because the borrower lived in Illinois.  Payday loans do not involve the lender

---

[6] TitleMax's reliance on _Advantage Veterans Servs. of Walterboro, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l, Local 7898_, 70 F.4th 751 (4th Cir. 2023) fails for the same reason.  There, an award was vacated because "[n]othing in the award indicates the arbitrator made [the required] determination…"  (_Id_. at 757).
[7] As the motion was unopposed, the Court in _Mori_ was required to confirm the Award.  9 USC § 9.

recording a lien, taking payments, or taking the collateral in state.[8]  Arbitrator Rakowski demonstrated this distinction in *Miller v. TitleMax of Virginia, Inc.* (dated June 13, 2025 )(DN 123-7)("None of [the cases relied upon by TitleMax] address TitleMax's contention that because this is an arbitration, the arbitrator is bound to enforce the Virginia choice of law provision.") *Id.* at 7.[9]  Arbitrator Rakowski recognized that, in *Wall*, the North Carolina appellate courts (unlike Illinois) had ruled that "the same choice of law provisions used in this case are unenforceable." *Id.* at 10. He held:

> In the instant case, Miller claims that TitleMax violated North Carolina tort statutes. She neither challenges the validity of the loan agreement, nor does she claim that TitleMax breached the loan agreement.
>
> For the above reasons, the arbitrator concludes that the Virginia choice of law is inapplicable because Miller's claims sound in tort, not contract.  Thus, TitleMax is subject to North Carolina law.

*Id*. at 11.  Rakowski, here, applied the North Carolina cases—not his own public policy.

*Snipes, Edstrom,* and *Mori* do not alter the standard of review under the "exceeds his powers" or "essence of the contract" doctrines.  That standard remains "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Pilgrim's Pride* at 14, citing *Oxford Health Plans*, 569 U.S. at 569.  "'[A]ny doubts concerning the scope of arbitrable issues,' as well as any doubts concerning the scope of the arbitrators'

---

[8] TitleMax cites *Capstone Building Corp v. Mid-Atlantic Mechanical*, 08CV1157 (N.D.Alab. Nov. 12, 2008).  *Capstone* is a commercial case with no statutory tort or extracontractual claims.  Nor was there any caselaw cited in that setting in Alabama or any other applicable state that set aside the choice-of-law provision as unenforceable.  TitleMax's cited to *Michelin N. Amer v. Inter-City Tire* (D.S.C. 2013) is also unavailing as that case only involves the enforceability of a contract—not separate tort claims under a statute based on acts done in another state after the contract in violation of those statutes.
[9] Arbitrator Rakowski rejected TitleMax's reliance on *Snipes*.  (7 at 7-10)(" TitleMax's reliance upon [*Snipes*] widely misses its mark.").

11

remedial authority, are to be resolved in favor of the arbitrators' authority." *Peoples Sec. Life Ins. Co. Monumental Life Ins. Co.*, 991 F.2d 141, 147 (4th Cir. 1993).

Nor is the Arbitrator's refusal to apply *Snipes*, *Edstrom,* or *Mori* a manifest disregard of the law.[10] TitleMax did not cite *Edstrom* or *Mori* to the Arbitrator. TitleMax's application of *Snipes* is not a legal principle that is clearly defined nor subject to reasonable debate. This Court rejected *Snipes*, pointing out that the *Patten* Arbitrator went much further by adding a statute of limitations—one not supported by any state's law. *Goines v. TitleMax of Va.*, 1:19CV489 (M.D.N.C. May 09, 2023) (DN 123-6). Indeed, the Arbitrator cited to and relied on this Court's decision in *Goines* and rejected TitleMax's *Snipes* argument. DN 165-3, p. 24.

**IV.     The Governing Law provisions in the Loan Agreements Do Not Apply to Baldwin's Claims or are Ambiguous.**

To vacate the Award, TitleMax bears the heavy burden to establish that the "Governing Law" provision unquestionably applies not just to "this Note" but to statutory claims, and that no rational reading of the contracts could conclude otherwise. Because she found that Governing Law provision was void, Arbitrator Thompson was not required to address the breadth of the provision. *Kollmann v. Carolina Sports Clinic - Fort Mill LLC, C. A*. 0:21-cv-03015-DCC, p.10 (D.S.C. Mar 11, 2025)(DN 123-9) relying on and quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2nd Cir. 2003): "[e]ven where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case….[A] federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a ***barely***

---

[10] The standard for manifest disregard of the law is discussed in Section V, *supra.*

*colorable justification* for the outcome reached." *Id*. (internal quotation omitted) (emphasis added)(citing *Wallace v. Butttar*, 378 F.3d 182, 190 (2d Cir. 2004).

The First Circuit addressed a similar situation in *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, (No. 09-1934, (1st Cir. Aug 04, 2010) (unpublished) (DN 123-10).[11] *Also see Waerness v. Allscripts Healthcare US, LP*, 5:14-CV-335 (E.D.N.C.)(choice-of-law provision covers the contract but is silent as to torts and therefore does not apply to claim under North Carolina statutes); *In re Capital One 360 Sav. Acct. Int. Rate Litig.,* No. 1:24md3111 (E.D.Va. November 12, 2024), p.43-46 (where Governing Law provision is silent on torts, not accompanied by a Forum Selection Clause, and another section of the contract is broader, the Governing Law provision only covers contract claims and not tort claims related to the contract). The "Governing Law" provision governs "this Note." The Arbitration Clause applies to all "Disputes." The definition of "Dispute" includes numerous other types of disputes beyond the "Note." If these statutory tort claims were encompassed by simply saying "this Note," the broader definition of "Dispute" would be superfluous.

Two provisions in the Arbitration Provision (¶ 24 of Loan Agreement) about "Rules" and the "Law" make no mention of South Carolina law. These provisions ask: "What rules apply to the arbitration?" and "What law applies?"

The former is answered "[u]sually, the arbitration company rules." The following further detail is also provided:

> If the parties use an arbitration company such as JAMS, that company's consumer arbitration rules will apply. If the parties chose an independent TPA, then such TPA will follow the JAMS consumer arbitration rules, unless the parties mutually agree to an alternative. In any case, the TPA will not apply any state or federal

---

[11] While the First Circuit's ruling in *Vertex Surgical* was based on de novo review, this Court's standard for reviewing an Arbitration Award is under the FAA.

rules of civil procedure or evidence. Arbitration rules that conflict with this clause
do not apply.

The latter is answered "The Federal Arbitration Act (FAA)." The following further detail
is also provided:

The FAA governs this Clause. The TPA must apply law consistent with the FAA.
The TPA must honor statutes of limitation and privilege rights. Constitutional
standards that apply in court proceedings governs punitive damage awards.

The Governing Law provision in ¶ 22 by its terms applies only to "this Note" and specif-
ically not ¶ 24, the Arbitration Provision. These provisions were drafted by TitleMax. "[T]he
language of the arbitration clause should be strictly construed against the drafter of the
clause." *Harbour Point Homeowners' Ass'n v. DJF Enters.*, 688 S.E.2d 47, 201 N.C. App. 720
(N.C. App. 2010).

## V.      The Arbitrator Did Not Manifestly Disregard the Law.

The Fourth Circuit has described the standard for overturning an arbitration award on the
basis of alleged manifest disregard of the law as follows:

[A]n award may be overturned if it flowed from an arbitrator's manifest disregard
of the applicable law. *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d
188, 193 (4th Cir.1998). In order to secure judicial relief on such grounds, it must
be shown that the arbitrator, in making his ruling, was "aware of the law, under-
stood it correctly, found it applicable to the case before [him], and yet chose to
ignore it in propounding [his] decision." *Remmey v. PaineWebber, Inc.*, 32 F.3d
143, 149 (4th Cir.1994).

*Long John Silver's Rests, Inc. v. Cole*, 514 F.3d 345, 349-350 (4th Cir. 2008). Further, "in almost
all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end
of our analysis..." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 674 (4th Cir. 2022). The *Warfield*
Court continued: "[w]e have previously explained that in the absence of clearly on-point and
controlling precedent, the fact that courts disagree on a particular legal question weighs against
second-guessing an arbitrator's award." *Id*. at 670. This issue was previously argued at length.

14

*Richards v. TitleMax*, 20CV347, DN 148, pp. 13-19.

"To establish manifest disregard, a party must demonstrate: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 669-70 (4th Cir. 2022) (internal quotations omitted). "To demonstrate that the disputed legal principle is clearly defined and is not subject to reasonable debate, ICON had to present to the arbitrators binding precedent requiring a contrary result...." *Warfield* at 670 (internal quotations omitted). TitleMax has presented no such binding precedent. In *Warfield,* the Fourth Circuit reversed an order vacating an award. "We have previously explained that in the absence of clearly on-point and controlling precedent, the fact that courts disagree on a particular legal question weighs against second-guessing an arbitrator's award." *Id*.

TitleMax's arguments do not constitute "binding precedent requiring a different result." TitleMax relies on *Oestreicher v. American National Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976) to claim that Baldwin must plead and prove a cause of action involving an identifiable tort to recover punitive damages. *Oestreicher* predates Chapter 1D (the current North Carolina punitive damage law). Claimant's punitive damages claim is based upon TitleMax's willful and wanton violations of North Carolina law. Chapter 1D expressly provides that punitive damages can be awarded for willful or wanton conduct (N.C. Gen. Stat. § 1D-15). *Oestreicher* reversed a trial court holding that a breach of contract case that had a claim with "tort overtones" cannot support a claim for punitive damages, finding "the better rule would require that defendant be punished by permitting plaintiff to recover punitive damages." 225 S.E.2d at 809.

TitleMax relies on *Doughty v. Atlantic & North Carolina Railroad,* 78 N.C. 22 (1878) to argue that a NCCFA claim is an "action in contract" and cannot support an award of punitive

15

damages.  This misses the mark. The *Doughty* Court, applying abandoned civil procedure doctrine, affirmed dismissal on the grounds that an action for a penalty is an "action on contract" and cannot be joined to a tort claim.  *Id.*  The *Doughty* court did not address the NCCFA (since it did not exist in 1878) or usury.   Baldwin's claims are not actions for a penalty.  The NCCFA does not prescribe a monetary penalty.  Rather, N.C. Gen. Stat. § 53-166(d) bars collection of void loans.  When TitleMax collected anyway, it damaged Baldwin, and Baldwin was awarded damages—not a penalty.

*Commercial Finance Co. v. Holder*, 235 N.C. 96, 68 S.E.2d. 794 (1952), cited by TitleMax, concerns civil procedure prior to the adoption of the North Carolina Rules, and not to whether a violation of the NCCFA can form a basis for punitive damages.  *Holder* was in the context of Usury—an entirely different law in North Carolina than the NCCFA, which postdates *Holder*. The Award was not based on Chapter 24.  It was based on North Carolina's Consumer Finance Act (Chapter 53) and North Carolina's Unfair & Deceptive Trade Practices Act (Chapter 75).  The NCCFA and the NCUDTPA creates statutory torts outside the contract.  *Wall v. AutoMoney* held in this context that "(p)laintiffs have brought extra-contractual statutory claims under the NCCFA (and) the UDTPA."  *Wall* at Paragraph 25.  TitleMax now relies on cases in a different context that predate those statutes—despite the North Carolina Appellate Courts having recently weighed in on the nature of these claims in this exact context.   *See also Boyd v. Drum,* 129 N.C.App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd per curiam,* 350 N.C. 90, 511 S.E.2d 304 (1999)("[I]t is well-recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract.").

*Russell v. Taylor,* 37 N.C. App. 520 (1978) and *Huberth v. Holly*, 120 N.C. App. 348 (1995) do not establish manifest disregard of the law.  Both are pre-Chapter 1D cases that deal with the

16

question of statutory authorization for punitive damages. In *Russell*, the Court determined that the statute under which Plaintiff sought punitive damages—G.S. 99A-1—did not authorize the recovery of punitive damages under the facts of that case. *Russell*, 37 N.C. App. 527. Similarly, in *Huberth* the court found a similar lack of statutory authorization where a Plaintiff sough punitive damages for violation of N.C.G.S. § 113A-66(a)(3). *Huberth*, 120 N.C. App. at 355 (note, however, that the Court affirmed punitive damages on an alternate basis, holding: "[p]unitive damages are in the discretion of the fact finder and may be awarded 'where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evinces a reckless and wanton disregard of the litigant's rights.'") *Id.* Chapter 1D for the first time authorized punitive damages for willful and wanton conduct <u>in any context</u>. With the passage of 1D in 1995, North Carolina changed its law making earlier cases which determined punitive damages were not authorized by statute in particular situations no longer good law.

TitleMax claims Arbitrator manifestly disregards the law by imposing impermissible double punishment. The only election of remedies that is required is set forth in N.C. Gen. Stat. § 1D-20: "A Claimant must elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages." The Arbitrator correctly required Baldwin to make that election between treble damages pursuant to N.C. Gen. Stat. § 75-16 and punitive damages. A repeat drunk driver can be assessed punitive damages each time he drives drunk and injures someone. There is no insulation for repeated offenses merely because he or she has had punitive damages awarded against them once. Also, in determining the amount of punitive damages, the North Carolina legislature specifically provides in 1D-35(g) that the "existence and frequency of any similar past conduct by the defendant" is relevant.

17

Further, North Carolina courts have determined that amounts awarded pursuant to N.C. Gen. Stat. § 53-166(d) are damages. *See, e.g. Poe*, (DN 93-8)). Numerous JAMS Panels have rejected this argument. (*Flowers* (DN 93-5), *Livingston* (DN 93-6), *LeGrand* (DN 93-7), *Jefferies* (DN 148-2). At a minimum, cases that predate[12] the statutorily created remedies at issue certainly do not represent "binding precedent requiring a contrary result." The North Carolina Superior Court reached this precise result (*Okafor* (DN 93-9)), and that authority was provided to the Arbitrator.

Neither *Jones v. Georgia-Pac. Corp.*, 15 N.C. App. 515 (1972) nor *Shavitz v. City of High Point*, 177 N.C. App. 465 (2006) address the interplay of damages under the NCCFA and punitive damages. In *Wall v. AutoMoney*, the Court specifically noted: "[i]t is the intent of the General Assembly that [the NCCFA] should be construed broadly to prohibit illicit lending schemes and to clarify the devices, subterfuges, and pretenses that are prohibited...." *Wall v. Automoney, Inc.*, 284 N.C.App. 514, 877 S.E.2d 37, 48-49 (N.C. App. 2022).

Lastly, TitleMax argues the award is excessive, yet fails to present "binding precedent requiring a contrary result." The Fourth Circuit has held:

> Our sister circuits agree that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount "would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364-65 (11th Cir.2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); s*ee also Abner v. Kan. City S. R.R.*, 513 F.3d 154, 165 (5th Cir.2008) (affirming punitive damages award of $125,000 accompanying nominal

---

[12] *Barnard v. Rowland*, 132 N.C.App. 416, 424, 512 S.E.2d 458, 464-65 (1999) was decided in 1999; however, the cause of action accrued and the civil action was filed in 1995, making the new law inapplicable. TitleMax cites *Britt v. Georgia-Pacific Corp.,* 46 N.C.App. 107, 110, 264 S.E.2d. 395, 398 (1980) for the claim "plaintiff cannot recover both common law punitive damages and statutory penalties." *Britt* does not address punitive damages. *Britt* addresses election between a decrease in the value of land as a result of timber cutting versus the value of the timber taken, and an election that is required in that specific context is not present here.

damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir.2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir.1996) (rejecting ratio analysis because "the compensatory award here was nominal, [so] any appreciable exemplary award would produce a ratio that would appear excessive by this measure"). Thus, we do not rely upon the challenged ratio to foreclose the punitive damages award here.

*Saunders v. Branch Banking & Tr. Co. of Va*, 526 F.3d 142, 154 (4th Cir. 2008).

*Saunders* affirmed a punitive award with an 80:1 ratio with compensatory damages: "As the court noted in *Bach*, 'a punitive damages award must remain of sufficient size to achieve the twin purposes of punishment and deterrence.'" *Saunders* at 154 (citing with approval *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338-39 (11th Cir.1999) (allowing $4.35 million punitive damages award with a 100:1 ratio "because compensatory damages are quite small and a bigger award is needed to attract the attention of a large corporation" (quotations and alterations omitted)). *Id.* Given that the 4th Circuit has affirmed a punitive award with an 80:1 ratio, and cited approvingly to a 100:1 ratio, there certainly is no "binding precedent requiring a contrary result" here, where the ratio of punitive damages ($250,000) to compensatory damages ($4,300.61) is a ratio of less than 58:1.

## CONCLUSION

TitleMax's desire is a *de novo* review here of all factual and legal issues. TitleMax claims its Arbitration clause allows it to enter another state and commit torts in violation of that state's law. No Court has found such; nor should they. Arbitrators are undoubtedly allowed to follow statutes and caselaw. This Arbitrator got the legal conclusion correct; however, the issue here is whether she made the choice-of-law analysis the parties voluntarily submitted to her. She did so.

TitleMax has failed to carry its burden to vacate pursuant to 9 U.S.C. § 10(a)(4). TitleMax's motion should be denied and the Award confirmed.

19

This is the 10th day of July, 2025.

/s/ *Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
James R. Faucher
N.C. State Bar No. 31514
Attorneys for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com
james@greensborolawcenter.com

20

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

/s/ *Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com