# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADRIENNE RICHARDS, et al., )
)
    Plaintiffs/Counter Defendants, )
)
v. )
)     1:20-cv-00347-LCB-JLW
)
TITLEMAX OF SOUTH CAROLINA, et al., )
)
    Defendants/Counter Claimants. )

## LYNEE KIMBLE'S OPPOSITION
## TO TITLEMAX'S MOTION TO VACATE

NOW COMES Lyne Kimble, through counsel and pursuant to Local Rule 7.3(f), and respectfully submits this Brief in Opposition to TitleMax's Motion to Vacate (DN 179).

## STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

Kimble filed suit in North Carolina asserting statutory tort claims under North Carolina's Consumer Finance Act ("NCCFA"). The Act applies to lenders who enter North Carolina in conjunction with or to enforce a loan with an interest rate higher than 30% APR. N.C.G.S. § 53-190. Making a high-interest loan in Virginia does not create liability—entering North Carolina, including purposely availing itself of the North Carolina legal system (through the North Carolina DMV or taking a car in North Carolina) does. *Wall v. Automoney, Inc.,* 284 N.C.App. 514, 526, 877 S.E.2d 37 (2022).

TitleMax charged Kimble 189% APR (DN 180-1). The Loan Agreement contained an Arbitration Provision that covers "Disputes"— defined in the Agreement:

> For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any

1

claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into this Loan Agreement, any past agreement or agreements between you and us, and/or any renewal of this Loan agreement; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; **(e) all claims based upon a violation of any state or federal constitution, statute or regulation**; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.  (emphasis added).

DN 180-1, p. 3.

The "Governing Law" provision does not apply to all "Disputes."  It states: "This Loan Agreement shall be governed by the laws of the State of Virginia, except that the Waiver of Jury Trial and Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA")". DN 180, p. 3.

Kimble's statutory tort claims were ordered to Arbitration (Text Order, July 20, 2020). The parties submitted a Proposed Order (Exhibit 1) and Arbitrator Gary Qualls entered a Scheduling Order substantially adopting the parties Proposed Order.  (Exhibit 2).  The Proposed and entered Orders stated: "Claimant contends North Carolina law applies.  Respondent contends Virginia Law Applies."  (Exhibit 1, p.1 ; Exhibit 2, p. 1).  AAA's Initiation Letter (Exhibit 3) notified the parties that the AAA Consumer Rules apply to the arbitration.  Further, AAA Consumer Due Process Protocols (Exhibit 4) expressly provide: "The arbitrator should be empowered

2

to grant whatever relief would be available in court under law or in equity." (Exhibit 4, Principal 14).

Arbitrator Qualls entered an Interim Award (DN 180-2) and Final Award (DN 180-3) for Kimble. Qualls specifically considered the "Governing Law" provisions in the Loan Agreements in his thorough choice of law analysis. (DN 180-2, p. 7-16.) Arbitrator Qualls citing, *Robinson v. Ladd Furniture*, 995 F.2d 1064 (4th Cir. 1993), determined that the Governing Law provision does not apply because "Kimble's claims are for violations of the North Carolina statutes. She does not seek rescission or damages for breach of contract." (DN 180-2, p. 14). Additionally, to the extent applicable, Arbitrator Qualls found that the choice of law provision in Claimant Kimble's loan agreement is void for the public policy reasons stated by the North Carolina Court of Appeals in *Wall v. AutoMoney*, 284 N.C. App. 514, 877 S.E.2d. 37 (2022) and the other *AutoMoney* cases. (DN 180-2, p. 9-15).

Qualls joined hundreds of Arbitrators (including a dozen[1] retired federal judges) in concluding the "Governing Law" provision does not apply to Plaintiff's claims and that North Carolina law applies. TitleMax moves to vacate the award by repeating the legal arguments the Arbitrator rejected.

**QUESTION PRESENTED**

Should this Court vacate the Arbitration Award?

**ARGUMENT**

**I.      Legal Standard.**

A court must confirm the Award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The party opposing the award bears the burden. *Strange v. Select Mgmt. Res.*, 1:19-

---

[1] A chart showing retired Federal Judges who have ruled against TitleMax on this issue, with citations to Awards, appears at DN 123-4.

3

CV-321, (M.D.N.C. Jun 28, 2021) (citing and quoting *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020)).

"Judicial review of an arbitration award 'is among the narrowest known at law.'" *Goines, et al. v. TitleMax of Va., et al.,* No. 1:19-CV-489 at *3 (May 9, 2023) (citing *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016)). "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award. Instead, the reviewing court asks only 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Id.* (*citing Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)).

Vacatur is available where "the award evidences a manifest disregard of the law." *Id.* (citing *Three S Del, Inc.*, 492 F.3d at 527). This requires: (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Id*. at 3-4 (citing *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015)). "Additionally, an award will be vacated under the FAA where the arbitrator 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* at 4 (citing 9 U.S.C. § 10(a)(4)).

In *Three S Delaware, Inc*., the 4th Circuit held:

> In evaluating whether an arbitrator has exceeded his power, we have generally recognized that any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy.

*Id*. at 527 (internal citations and quotations omitted).

The Arbitrator did not exceed his powers. He determined the Governing Law provision did not apply to the claims, and the facts established that TitleMax entered North Carolina and engaged

4

in contractual activities, triggering the NCCFA and making the Governing Law provision unen-forceable.

## II. TitleMax Willingly Submitted This Issue to Arbitration.

TitleMax submitted the choice-of-law question to arbitration. "When a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Pilgrim's Pride Corp. v. Diaz*, 5:22-cv-04413-JDA, p.12 (D.S.C. Mar 11, 2024) (Exhibit 8)(quoting *Env't Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 606 (7th Cir. 2008) (internal quotation marks omitted). *Pilgrim's Pride* concerned whether an arbitration clause permitted class arbitration. The Arbitrator determined the agreement permitted class arbitration; defendant argued "the Award should be vacated because (1) the arbitrator exceeded his powers, (2) the Award evidences a manifest disregard of the law, and (3) the Award fails to draw its essence from the Agreement." *Id*. at 11. "It was only after the arbitrator issued a decision that PPC did not agree with that PPC argued, for the first time in the instant Petition, that class arbitrability was an issue for the Court rather than the arbitrator in the first instance. But PPC 'simply cannot wait until it receives a decision with which it disagrees before challenging the arbitrator's authority.'" *Id.* at 13 (citing *Richmond, Fredericksburg & Potomac Ry. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 280 (4th Cir. 1992) (reversing vacatur of arbitration award)).

In *Richmond*, a union and railroad submitted to arbitration "whether the railroad could make unilateral severance offers to its clerical employees." *Id*. at 277. The arbitrator reviewed the agreement between the parties and caselaw relating to the Railway Labor Act ("RLA"), finding for the union. *Id.* at 277-78. The railroad sought vacatur. *Id*. The District Court agreed, "holding that the arbitrator exceeded the scope of the parties' submission in basing his award on

5

the requirements of the RLA and suggesting that the arbitrator's legal analysis was flawed." *Id.* The Fourth Circuit reversed. *Id.* at 279-80.

> In this case, RF & P and TCU submitted to the arbitrator the broad issue of "whether the RF & P can unilaterally separate employees without an agreement with TCU." The parties in no way confined the arbitrator's authority to an examination of the collective bargaining agreement. In so doing, the parties made the arbitrator the "final judge" on all questions that might arise in the disposition of the dispute….

> *Id*. at 279-80.

*Richmond* rejected the "conclusion that the arbitrator lacked the authority to consider federal case law in arriving at his decision." *Id.* at 278. "The Court has recognized that the limits of an arbitrator's authority are defined by the terms of the parties' own submission." *Id*. at 279. "We know of no statutory basis for any sort of rule that would require arbitrators to remain willfully ignorant of the governing statutes and case law." *Id.* The parties expressly submitted the issue of the applicable substantive law to Arbitration. They told here there was a dispute about the applicable substantive law and asked her to decide it. Yet, now TitleMax tells this Court that the Arbitrator exceeded her authority when she decided the very issue submitted to her.

TitleMax contends a finding of waiver "would render null 9 U.S.C. § 10(a)(4) and the essence of the contract doctrine." (*Richards v. TitleMax*, 1:20-cv-347-LCB-JLW, DN 183, fn. 3.) Not so. Plaintiff argues only that where a party specifically asks an Arbitrator to resolve a disputed issue, here the applicable substantive law, that party cannot thereafter claim that the Arbitrator exceeded his authority when he resolves that precise issue. On the other hand, if parties give an arbitrator an instruction in their arbitration agreement or submissions, and that instruction complies with the applicable arbitration rules, vacatur may be appropriate under 9 U.S.C. § 10(a)(4) where the arbitrator fails to follow that instruction. But that is not the situation

6

here.

### III.    The Arbitrator Did Not Exceed His Authority.

The "essence of the contract" falls under the FAA provision allowing for vacatur where an arbitrator "exceeds their powers," 9 U.S.C. § 10(a)(4).   The standard under 9 U.S.C. § 10(a)(4) is:

> A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error." *Oxford Health Plans*, 569 U.S. at 569 (cleaned up). Rather, "[b]ecause the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's review of its (de)merits." *Id.* (internal quotation marks omitted). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (alterations in original)….Rather, "[a]n arbitration award fails to draw its essence from the agreement only when the result is not rationally inferable from the contract." *Id.* (internal quotation marks omitted).

*Pilgrim's Pride* at 14.

Nothing in the contract instructed the Arbitrator to apply law differently than it would be applied in Court. *Hall St. Assocs. L.L.C., v. Mattel, Inc.*, 552 U.S. 576 (2008) held only that the parties cannot lower the standard of review for the Court under the FAA to provide for *de novo* review of questions of law.   Kimble and TitleMax did not direct "the arbitrator to apply a particular state's law."   They told her it was disputed.

The AAA Consumer Due Process Protocol states:"[t]he arbitrator should be empowered to grant whatever relief would be available in court under law or in equity." (Exhibit 4, Principal 14).   The Governing Law being void because it violates North Carolina Public Policy is "relief that would be available in court under law or equity."   Any dispute about whether the Arbitrator had the authority to enter the award must be resolved in favor of confirmation.   The Arbitrator did not apply his "personal notions of right and wrong," nor do his "words manifest an infidelity

7

to the agreement." The Arbitrator conducted a choice-of-law analysis, determining that TitleMax engaged in contractual activity in North Carolina pursuant to N.C. Gen. Stat. § 53-190, and that the governing law provisions do not apply to Kimble's statutory claims. (DN 180.2, p. 15). None of the cases relied on by TitleMax[2] are in the context of such a narrow, unenforceable Governing Law provision.

This Court and NC State Courts have rejected TitleMax's argument that an Arbitrator exceeded their authority in these circumstances. *Goines, et al. v. TitleMax of Va., et al.,* No. 1:19-CV-489, DN386, at 4-7 (May 9, 2023) (DN 123-6); *Hood v. TitleMax*, 25CV005827-400 paragraphs 18-30; *Frazier, et.al v. TitleMax*, 25CV005050-400; *Jefferies, et.al. v. TitleMax* 25CV006775-400. (Exhibit 5). *See* e.g., *Jefferies* ¶¶ 19-39. TitleMax's reliance on contrary out-of-Circuit authority fails. The 7th Circuit in *Bem I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002), denying a motion to vacate, imagines the following situation:

> [A]lthough the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award.

*Id*. at 554. That is not analogous to the situation here where the arbitration clause was silent on state law, and the Arbitrator had a sound basis to apply North Carolina law pursuant to *Wall v. AutoMoney* and N.C. Gen. Stat. § 53-190, and *Robinson v. Ladd Furniture*, 995 F.2d 1064 (4th Cir. 1993). Similarly, in *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128 (9th Cir. 2003) there was no dispute—or apparent basis as here—to apply the law of a different state; the Court nevertheless confirmed, stating "an arbitration award should be confirmed unless the arbitrators

---

[2] TitleMax continues to add new cases to each Reply—unfortunately leaving the Court to pull the case and identify the distinction.

could not have rendered the same award without manifestly disregarding the governing law." *Id.* at 1134. Finally, TitleMax relies on *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002), citing to Justice Thomas' opinion concurring in judgment. *Id.* at 87. Justice Thomas wrote "we held that under the Federal Arbitration Act courts must enforce private agreements to arbitrate just as they would ordinary contracts…." *Id.* There is nothing special about a Governing Law provision that happens to be in the same contract as an arbitration provision. It is only as enforceable as any other aspect of the contract—which is to say here not enforceable.

### A. *Snipes*, *Edstrom* and *Mori* Do Not Support TitleMax.

*Snipes v. TitleMax of Virginia, Inc.*, 876 S.E. 2d 864 (N.C. App. 2022) did not require the Arbitrator to rule for TitleMax. The narrow *Snipes* holding is that an arbitrator must state in the award that he or she has considered the contractual choice-of-law provision and finds that it does not apply. The Arbitrator considered and rejected TitleMax's argument based on *Snipes.* (DN 180-2, p. 7-8).

TitleMax's reliance on *Edstrom Indus., Inc. v. Companion Life Ins. Co.,* 516 F.3d 546 (7th Cir. 2008) and *Mori v. E. Side Lenders, LLC*, 2015 WL 13654184, at *3 (N.D. Ill. Mar. 24, 2015) is misplaced. Neither are binding. *Edstrom*, like *Snipes*, is an arbitration procedure case. In *Edstrom*, there was no dispute that Wisconsin law applied to the parties' dispute. *Id.* at 548. The dispute was whether a Wisconsin insurance misrepresentation statute applied. *Id.* at 550.

*Edstrom* determined the Arbitrator erred when he failed to consider the statute.[3] The court vacated the award and remanded to the arbitrator. *Id.* at 553. Here, there was no failure of the Arbitrator to consider the "Governing Law" provision.

---

[3] TitleMax's reliance on *Advantage Veterans Servs. of Walterboro, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l, Local 7898*, 70 F.4th

The *Mori* Court granted an "<u>unopposed</u>" motion to confirm.[4] Arbitrator Thomas Rakowski faced the question of whether a Delaware payday lender was subject to the Illinois Payday Loan Reform Act because the borrower lived in Illinois. Payday loans do not involve the lender recording a lien, taking payments, or taking the collateral in state.[5] Arbitrator Rakowski demonstrated this distinction in *Miller v. TitleMax of Virginia, Inc.* (Exhibit 6)("None of [the cases relied upon by TitleMax] address TitleMax's contention that because this is an arbitration, the arbitrator is bound to enforce the Virginia choice of law provision.") *Id.* at 7.[6] Arbitrator Rakowski recognized that, in *Wall*, the North Carolina appellate courts (unlike Illinois) had ruled that "the same choice of law provisions used in this case are unenforceable." *Id.* at 10. He held:

> In the instant case, Miller claims that TitleMax violated North Carolina tort statutes. She neither challenges the validity of the loan agreement, nor does she claim that TitleMax breached the loan agreement.
>
> For the above reasons, the arbitrator concludes that the Virginia choice of law is inapplicable because Miller's claims sound in tort, not contract. Thus, TitleMax is subject to North Carolina law.

*Id.* at 11. Rakowski, here, applied the North Carolina cases—not his own public policy.

*Snipes, Edstrom,* and *Mori* do not alter the standard of review under the "exceeds his powers" or "essence of the contract" doctrines. That standard remains "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."

---

751 (4th Cir. 2023) fails for the same reason. There, an award was vacated because "[n]othing in the award indicates the arbitrator made [the required] determination…." (*Id.* at 757).

[4] As the motion was unopposed, the Court in *Mori* was required to confirm the Award. 9 USC § 9.

[5] TitleMax cites *Capstone Building Corp v. Mid-Atlantic Mechanical*, 08CV1157 (N.D.Alab. Nov. 12, 2008). *Capstone* is a commercial case with no statutory tort or extracontractual claims. Nor was there any caselaw cited in that setting in Alabama or any other applicable state that set aside the choice-of-law provision as unenforceable.

[6] Arbitrator Rakowski rejected TitleMax's reliance on *Snipes*. (7 at 7-10)(" TitleMax's reliance upon [*Snipes*] widely misses its mark.").

*Pilgrim's Pride* at 14, citing *Oxford Health Plans*, 569 U.S. at 569. "'[A]ny doubts concerning the scope of arbitrable issues,' as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority." *Peoples Sec. Life Ins. Co. Monumental Life Ins. Co.*, 991 F.2d 141, 147 (4th Cir. 1993).

Nor is the Arbitrator's refusal to apply *Snipes*[7] a manifest disregard of the law. TitleMax's application of *Snipes, Edstrom* and *Mori* is not a legal principle that is clearly defined nor subject to reasonable debate. This Court rejected *Snipes*, pointing out that the *Patten* Arbitrator went much further by adding a statute of limitations—one not supported by any state's law. *Goines v. TitleMax of Va.*, 1:19CV489 (M.D.N.C. May 09, 2023) (DN 123-6). *Edstrom* and *Mori* are non-binding, out-of-circuit cases.

### IV. The Governing Law provisions in the Loan Agreement Does Not Apply to Kimble's Claims or are Ambiguous.

To vacate the Award, TitleMax bears the heavy burden to establish that the "Governing Law" provision unquestionably applies not just to "this Note" but to statutory claims, and that no rational reading of the contracts could conclude otherwise. Here the Arbitrator addressed the breadth of the "Governing Law" provision and found that it does not apply to Kimble's statutory claims. (DN 180-2, p. 13-14 (discussing *Robinson v. Ladd Furniture*, 995 F.2d 1064 (4th Cir. 1993)). Arbitrator Qualls got this legal issue right, but even if he did not, "a federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a ***barely colorable justification*** for the outcome reached." *Id*. (internal quotation omitted) (emphasis added)(citing *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004)).

---

[7] The Arbitrator did not address *Edstrom* or *Mori* because TitleMax did not submit those cases to her.

11

Here, there is ample authority that a governing law provision that applies to an agreement does not apply to statutory claims. *See P&L Dev., LLC v. Biopharma, Inc.*, 367 F.Supp. 3d 421 (M.D.N.C. 2019). This Court, determining whether a choice-of-law provision that governed "the agreement" applies to a Chapter 75 claim found:

> This provision may require application of North Carolina law to the interpretation and enforcement of the Agreement, but even by its own terms, such application is limited to the Agreement. "[I]t does not provide the applicable law for a claim based on unfair and deceptive acts." *United Dominion Indus., Inc.*, 762 F.Supp. at 128 ("Because the liability under N.C. Gen. Stat. § 75-1.1 is not contractual, the choice of law provision included in the agreement ... is not applicable."); see also *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("We are satisfied that North Carolina courts would apply N.C. Gen. Stat. § 75-1.1 to the facts presented here without regard to the presence of the contractual choice of law provision. The nature of the liability allegedly to be imposed by the statute is ex delicto, not ex contractu.").

*Id.* at 429. *See also Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, (No. 09-1934, (1st Cir. Aug 04, 2010) (unpublished) (Exhibit 7). *Also see Waerness v. Allscripts Healthcare US, LP*, 5:14-CV-335 (E.D.N.C.)(choice-of-law provision covers the contract but is silent as to torts and therefore does not apply to claim under North Carolina statutes). The "Governing Law" provision governs "this Note." The Arbitration Clause applies to all "Disputes" including claims based on statutes. If these statutory claims were encompassed by simply saying "the Loan Agreement" the broader definition of "Dispute" would be superfluous. The NCCFA and the NCUDTA creates statutory torts outside the contract—even the *Wall v. AutoMoney* court held in this exact context that "(p)laintiffs have brought extra-contractual statutory claims under the NCCFA (and) the UDTPA." *Wall* at Paragraph 25. Yet TitleMax now relies on cases in a different context that predate those statutes—despite the North Carolina Appellate Courts having recently weighed in on the nature of these claims under these particular statutes in this exact car title context. Also see *Boyd v. Drum,* 129 N.C.App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd per curiam,* 350 N.C.

90, 511 S.E.2d 304 (1999)("[I]t is well-recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract.")

The Governing Law provision by its terms applies only to "[t]he Loan Agreement" and specifically not the "Arbitration Provision." (DN 180-1, p. 3)  The Arbitration provision is "governed by the FAA." (DN 180-1, p. 4, ¶ 7).  These provisions were drafted by TitleMax.  "[T]he language of the arbitration clause should be strictly construed against the drafter of the clause." *Harbour Point Homeowners' Ass'n v. DJF Enters.*, 688 S.E.2d 47, 201 N.C. App. 720 (N.C. App. 2010).

**V.      The Arbitrator Did Not Manifestly Disregard the Law.**

The Fourth Circuit has described the standard for overturning an arbitration award based on alleged manifest disregard of the law as follows:

> [A]n award may be overturned if it flowed from an arbitrator's manifest disregard of the applicable law. *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir.1998). In order to secure judicial relief on such grounds, it must be shown that the arbitrator, in making his ruling, was "aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir.1994).

*Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349-350 (4th Cir. 2008).  Further, "in almost all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end of our analysis..." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 674 (4th Cir. 2022).  The *Warfield* Court continued: "[w]e have previously explained that in the absence of clearly on-point and controlling precedent, the fact that courts disagree on a particular legal question weighs against second-guessing an arbitrator's award." *Id*. at 670.

"To establish manifest disregard, a party must demonstrate: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply

13

that legal principle." *Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 669-70 (4th Cir. 2022) (internal quotations omitted). "To demonstrate that the disputed legal principle is clearly defined and is not subject to reasonable debate, ICON had to present to the arbitrators binding precedent requiring a contrary result...". *Warfield* at 670 (internal quotations omitted). TitleMax has presented no such binding precedent.

TitleMax's arguments do not constitute "binding precedent requiring a different result." TitleMax relies on *Oestreicher v. American National Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976) to claim that Kimble must plead and prove a cause of action involving an identifiable tort to recover punitive damages. *Oestreicher* predates Chapter 1D (the current North Carolina punitive damage law). Claimant's punitive damages claim is based upon TitleMax's willful and wanton violations of North Carolina law. Chapter 1D expressly provides that punitive damages can be awarded for willful or wanton conduct (N.C. Gen. Stat. § 1D-15). *Oestreicher* reversed a trial court holding that a breach of contract case that had a claim with "tort overtones" cannot support a claim for punitive damages, finding "the better rule would require that defendant be punished by permitting plaintiff to recover punitive damages." 225 S.E.2d at 809.

*Commercial Finance Co. v. Holder*, 235 N.C. 96, 68 S.E.2d. 794 (1952), cited by TitleMax, concerns civil procedure prior to the adoption of the North Carolina Rules, and not to whether a violation of the NCCFA can form a basis for punitive damages. *Holder* was in the context of Usury—an entirely different law in North Carolina than the NCCFA, which postdates *Holder*. The Award was not based on Chapter 24. It was based on North Carolina's Consumer Finance Act (Chapter 53) and North Carolina's Unfair & Deceptive Trade Practices Act (Chapter 75). The NCCFA and the NCUDTPA creates statutory torts outside the contract. *Wall v. AutoMoney* held in this context that "(p)laintiffs have brought extra-contractual statutory claims under the NCCFA

14

(and) the UDTPA." *Wall* at Paragraph 25. TitleMax now relies on cases in a different context that predate those statutes—despite the North Carolina Appellate Courts having recently weighed in on the nature of these claims in this exact context. *See also Boyd v. Drum,* 129 N.C.App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd per curiam,* 350 N.C. 90, 511 S.E.2d 304 (1999)("[I]t is well-recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract.").[8]

TitleMax conflates jurisdictional categorization of claims as being "actions in contract" with N.C. Gen. Stat. § 1D-15: "[p]unitive damages shall not be awarded against a person solely for breach of contract." Even if Claimant's claims would have been categorized in 1950 (when the NCCFA did not exist) as *actions in contract* for jurisdictional purposes, that is irrelevant under Chapter 1D.[9] Claimant's claims are not claims for breach of contract. There is no authority that statutory claims that relate to a contract—but do not allege breach of contract—cannot form the basis for punitive damages. *Oestreicher, Holder* and the other authorities cited by TitleMax, all of which predate Chapter 1D, fall far short of "binding precedent requiring a contrary result." *Warfield.*

---

[8] Similarly, *Auto Finance Co. of N. C. v. Simmons*, 102 S.E.2d 119, 247 N.C. 724 (N.C. 1958), which predates both the North Carolina Consumer Finance Act, and Chapter 1D is not "binding precedent requiring a different result" on the question of whether damages under the NCCFA can be recovered with punitive damages under Chapter 1D. Chapter 1D, when passed in 1995, requires that a "claimant must elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages." The NCCFA does not provide for a multiple of damages.

[9] *Credit Corp. v. Robeson Motors*, 243 N.C. 326, 90 S.E.2d 886 (1956) also fails to establish manifest disregard of the law. *Credit Corp.* analyzed whether a jurisdictional statute, G.S. § 1-137 (repealed in 1967) permitted a counterclaim for usury in response to an action to collect a debt. *Id.* 243 N.C. 329. It says nothing about whether a NCCFA claim is "solely for breach of contract" which is the standard in N.C. Gen. Stat. 1D-15(d) that TitleMax claims was manifestly disregarded.

*Russell v. Taylor,* 37 N.C. App. 520 (1978) and *Huberth v. Holly*, 120 N.C. App. 348 (1995) do not establish manifest disregard of the law. Both are pre-Chapter 1D cases that deal with the question of statutory authorization for punitive damages. In *Russell*, the Court determined that the statute under which Plaintiff sought punitive damages—G.S. 99A-1—did not authorize the recovery of punitive damages under the facts of that case. *Russell*, 37 N.C. App. 527. Similarly, in *Huberth* the court found a similar lack of statutory authorization where a Plaintiff sough punitive damages for violation of N.C.G.S. § 113A-66(a)(3). *Huberth* 120 N.C. App. at 355 (note however, that the Court affirmed punitive damages on an alternate basis, holding: "Punitive damages are in the discretion of the fact finder and may be awarded 'where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evinces a reckless and wanton disregard of the litigant's rights.") *Id.* Chapter 1D authorizes punitive damages for willful and wanton conduct.

TitleMax claims Arbitrator imposed impermissible double punishment. The only election of remedies is codified in N.C. Gen. Stat. § 1D-20: "A Claimant must elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages." The Arbitrator correctly required Kimble to make that election. There is no insulation for repeated offenses merely because he or she has had punitive damages awarded against them once. Also, in determining the amount of punitive damages, the North Carolina legislature specifically provides in 1D-35(g) that the "existence and frequency of any similar past conduct by the defendant" is relevant.

Further, North Carolina courts have determined that amounts awarded pursuant to N.C. Gen. Stat. § 53-166(d) are damages. *See, e.g. Poe*, (DN 93-8)). Numerous JAMS Panels have rejected this argument. (*Flowers* (DN 93-5), *Livingston* (DN 93-6), *LeGrand* (DN 93-7) *Jefferies*

(DN 148-2). At a minimum, cases that predate[10] the statutorily created remedies at issue certainly do not represent "binding precedent requiring a contrary result." The North Carolina Superior Court reached this precise result (*Okafor* (DN 130-5)), and that authority was provided to the Arbitrator.

Neither *Jones v. Georgia-Pac. Corp.*, 15 N.C. App. 515 (1972) nor *Shavitz v. City of High Point*, 177 N.C. App. 465 (2006) address the interplay of damages under the NCCFA and punitive damages. In *Wall v. AutoMoney*, the Court specifically noted: "[i]t is the intent of the General Assembly that [the NCCFA] should be construed broadly to prohibit illicit lending schemes and to clarify the devices, subterfuges, and pretenses that are prohibited..." *Wall v. Automoney*, Inc., 284 N.C.App. 514, 877 S.E.2d 37, 48-49 (N.C. App. 2022).

TitleMax argues the award is excessive, yet fails to present "binding precedent requiring a contrary result." The Fourth Circuit has held:

> Our sister circuits agree that when a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount "would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1364-65 (11th Cir.2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); s*ee also Abner v. Kan. City S. R.R.*, 513 F.3d 154, 165 (5th Cir.2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 674-78 (7th Cir.2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir.1996) (rejecting ratio analysis because "the compensatory award here was nominal, [so] any appreciable exemplary award would produce a ratio that would

---

[10] *Barnard v. Rowland*, 132 N.C.App. 416, 424, 512 S.E.2d 458, 464-65 (1999) was decided in 1999; however, the cause of action accrued and the civil action was filed in 1995, making the new law inapplicable. TitleMax cites *Britt v. Georgia-Pacific Corp.,* 46 N.C.App. 107, 110, 264 S.E.2d. 395, 398 (1980) for the claim "plaintiff cannot recover both common law punitive damages and statutory penalties." *Britt* does not address punitive damages. *Britt* addresses election between a decrease in the value of land as a result of timber cutting versus the value of the timber taken, and an election that is required in that specific context is not present here.

17

appear excessive by this measure"). Thus, we do not rely upon the challenged ratio to foreclose the punitive damages award here.

*Saunders v. Branch Banking & Tr. Co. of Va*, 526 F.3d 142, 154 (4th Cir. 2008).

*Saunders* affirmed a punitive award with an 80:1 ratio: "As the court noted in *Bach*, 'a punitive damages award must remain of sufficient size to achieve the twin purposes of punishment and deterrence.'..." *Saunders* at 154 (citing with approval *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338-39 (11th Cir.1999) (allowing $4.35 million punitive damages award with a 100:1 ratio "because compensatory damages are quite small and a bigger award is needed to attract the attention of a large corporation" (quotations and alterations omitted)). *Id.* Given that the 4th Circuit has affirmed a punitive award with an 80:1 ratio, and cited approvingly to a 100:1 ratio, there certainly is no "binding precedent requiring a contrary result" here, where the ratio of punitive damages ($250,000) to compensatory damages ($2,255.54) is a similar 110:1. TitleMax's attempt to distinguish *Saunders* because TitleMax acted in good faith belief that Virginia law applied was rejected by the Arbitrator finding "TitleMax's pattern and course of conduct is, and has been, willful and wanton and intentionally evasive of North Carolina law." (DN 180-2, p. 35). Further, the Arbitrator found that "TitleMax knew that it was making title loans to North Carolina residents that far exceed this State's legal limits and knew it was continuing to harm North Carolina residents." (DN 18-2, p. 37). The Arbitrator had ample record support for his findings.

## **CONCLUSION**

TitleMax claims its Arbitration clause allows it to enter another state and commit torts in violation of that state's law. No Court has found such; nor should they. Arbitrators are undoubtedly allowed to follow statutes and caselaw. TitleMax has failed to carry its burden to vacate pursuant to 9 U.S.C. § 10(a)(4). TitleMax's motion should be denied, the Award

18

confirmed, and judgment entered for Kimble against TitleMax of Virginia, Inc. as set forth in the

Final Award.

This is the 6th day of August, 2025.

/s/ *Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
James R. Faucher
N.C. State Bar No. 31514
Attorneys for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com
james@greensborolawcenter.com

19

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

/s/ Andrew H. Brown
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

20