# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADRIENNE RICHARDS, *et al.*  )
                               )

     Plaintiffs,  )
                               )

     v.  )
                               )        1:20-CV-00347-LAF-JEP

TITLEMAX OF SOUTH  )
CAROLINA, INC., *et al.*  )
                               )

     Defendants.  )
                               )
                               )
                               )

## PLAINTIFF'S OPPOSITION
## TO TITLEMAX'S MOTION TO AMEND MOTION TO VACATE

NOW COMES Plaintiff, Talaya Jones ("Plaintiff"), pursuant to Local Rule 7.3(f), and submits this Brief in Opposition to TitleMax's Motion to Amend Motion to Vacate ("Motion to Amend") (ECF No. 227).

## **SUMMARY OF OPPOSITION**

TitleMax's initial filings before this Court mischaracterized and grossly overstated the contents of the 2026 Medley Declaration in an effort to escape liability. TitleMax has not met the high burden of establishing[1]—by clear and convincing evidence—that the 2020 Medley Declaration is a forgery, and that Plaintiff's counsel knew it was a forgery. To meet this standard, it must be "highly probable" that the 2020 Medley Declaration was a

---

[1] Allegations are not enough, lest arbitration confirmations be held up by mere allegations. "Instead, the standard, which is established by the FAA, is <u>whether the facts the movant has marshaled in his motion papers are sufficient to support vacating or confirming the award</u>." *Switzer v. Credit Acceptance Corp.*, 5:09cv00075, 2010 U.S. Dist. LEXIS 7803, *11 (W.D. Va. Jan. 27, 2010) (emphasis added).

forgery or fraud, and that Plaintiff and/or Plaintiff's counsel knew it. *TVL Int'l, LLC v. Zhejiang Shenghui Lighting Co.*, No. 3:19-cv-00393-RJC-DCK, 2022 U.S. Dist. LEXIS 80607, *29-30, *35 (W.D.N.C. May 4, 2022) (Conrad, J.) There is simply not "clear and convincing" proof of intentionally bad faith actions by Plaintiff or Plaintiff's counsel, nor "clear and convincing" proof that Plaintiff or Plaintiff's counsel sought to procure the Award by fraud or undue means. Accordingly, this Court should deny TitleMax's Motion to Amend.

## I. TITLEMAX HAS FAILED TO ALLEGE, MUCH LESS PROVE, FRAUD IN SUPPORT OF ITS MOTION TO VACATE.

As a threshold matter, TitleMax must present evidence of fraud, not mere allegations, in its motion to vacate. "The rules of notice pleading . . . do not apply to a proceeding to vacate an arbitration award." *O.R. Sec., Inc. v. Professional Planning Assocs.*, 857 F.2d 742, 747 (11th Cir. 1988). Instead, the moving party has "the burden to set forth sufficient grounds to vacate the arbitration award in his moving papers." *Id*. *See also Switzer*, 2010 U.S. Dist. LEXIS 7803 at *11. Stated differently, "if the grounds stated in the [the] motion are insufficient to vacate the award, the motion to vacate must be denied." *Kaye v. Dean Witter Reynolds, Inc.*, No. 85-378-CIV-T-15, 1990 U.S. Dist. LEXIS 19993, *2 (M.D. Fla. 1990).

The governing law also makes clear what evidence is required. To prove fraud, TitleMax must show both a false representation of material fact and the intent to deceive. *See TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at *30. The 2026 Medley Declaration does not suffice to show either prong.

First, the declaration is equivocal. At no point does Medley state that he did not sign the 2020 Medley Declaration. Instead, Medley now claims that he "could not have signed that document" because of a series of personal tragedies, including his hospitalization from August 30, 2020 to September 6, 2020 due to complications with COVID-19, and the passing of his fiancée's daughter on September 4, 2020. Medley states:

- "I would not have communicated with any attorney that week in September 2020 about my work at TitleMax of Virginia, Inc."

- "I do not recall typing, creating, reviewing, of signing the declaration submitted in my name. I do not know how the declarations submitted in my name was typed, created, or signed. Prior to February 12, 2026, I have never seen the declaration submitted in my name."

- "I do not recall certifying that the declaration executed on September 9, 2020, was true and correct because I do not recall making that declaration."

(2026 Medley Declaration ¶¶ 28-29, 39).

At most, Medley now states that "I would not have sworn to the truth of those statements under penalty of perjury because several of the statements in that document are not true." (2026 Medley Decl., ¶ 30). But he does not state which statements are false. Instead, he states "I do not recall" more than eight times as to various aspects of his 2020 declaration. (*Id*. at ¶¶ 31-37, 39).

The second prong to prove fraud is also absent from TitleMax's Motion to Amend, namely, any allegation that Plaintiff's counsel submitted the 2020 Medley Declaration with intent to deceive arbitrators. To the contrary, as TitleMax informed the District of South Carolina, TitleMax is not "suggest[ing] that counsel for [Plaintiff] has intentionally done anything improper in obtaining the 2020 Medley Declaration." *See* **Exhibit 1** at 3, n.1.

As set forth *infra*, any investigation into this matter would lead to that same conclusion.

This Court can be confident in concluding that TitleMax has failed to present sufficient evidence at this stage to demonstrate fraud because TitleMax itself acknowledges its lack of evidence. Despite referring to the 2020 Medley Declaration as a "Forged Document" some forty times before multiple federal courts, TitleMax has admitted in its more recent briefing that the 2020 Medley Declaration is a "potential forgery" that may contain "potentially perjurious statements[.]" *See* ECF No. 166-1 at 2.

This failure of proof is borne out by TitleMax's statements to this Court also. At oral argument on TitleMax's "Emergency Motion," when the Court inquired if "a full-blown evidentiary hearing on the fraud [is what] you would like me to conduct[,]" TitleMax responded that it would, because "[w]e have a clear and convincing evidence standard that we have to meet and <u>we think we need a hearing in order to be able to make that showing of clear and convincing evidence</u>[.]" (Tr. p. 39:8-13) (**Exhibit 2**) (emphasis added).

The Court's review of this matter may end there. Because a party seeking to invalidate an award must come with hard evidence in its motion rather than mere allegations—and TitleMax has failed to present such evidence.

## II. TITLEMAX CANNOT MEET THE HIGH BURDEN TO ESTABLISH THE EXISTENCE OF FRAUD OR UNDUE MEANS TO VACATE THE ARBITRATION AWARD.

9 U.S.C. § 10(a)(1) permits an award to be vacated where it "was procured by corruption, fraud, or undue means." The evidence in favor of the party seeking vacatur on this ground must be established by clear and convincing evidence. *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010). The standard is high: "Clear and

convincing evidence has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at *29-30 (quoting *United States v. JC Youngblood*, 2021 U.S. App. LEXIS 20550, at *3 (4th Cir. July 12, 2021)).

TitleMax cannot meet this evidentiary standard, and its own arguments to this Court demonstrate that TitleMax itself cannot say "without hesitancy" that the Award must procured by fraud or undue means.

### III.     TITLEMAX CANNOT ESTABLISH THAT THE AWARD WAS PROCURED BY CORRUPTION, FRAUD, OR UNDUE MEANS.

In reviewing whether an arbitration award was procured by corruption, fraud, or undue means, the standard of review for this Court is "substantially circumscribed" and "among the narrowest known at law." *Id*. at *13 (quotations omitted). Thus, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id*. (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). These confirmation proceedings are "intended to be summary" in nature. *Id*. (quoting *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir.1986)).

To meet the standard under 9 U.S.C. § 10(a)(1), the moving "party must show that the fraud or undue means 'was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence.'" *Id*. at *27 (quoting *MCI Constructors*, 60 F.3d at 858). In cases "involving nondisclosure of information, clear and convincing evidence must

show that the [party] made a deliberate decision to withhold a known material reference." *Id*. at \*30 (quoting *Fuma Int'l LLC v. Reynolds Vapor Company*, 2020 U.S. Dist. LEXIS 114084, 2020 WL 3470458, at \*1 (M.D.N.C. Mar. 6, 2020)).

"Undue means" are actions that "are immoral if not illegal[.]" *MCI Constructors*, 610 F.3d at 858. Courts require a party to have acted in bad faith to meet this standard. *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at \*30. "The best reading of the term undue means is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *Id*. (quoting *Three S Del., Inc. v. DataQuick Info. Sys.*, 492 F.3d 520, 529 (4th Cir. 2007)). "The term undue means <u>also requires the misconduct to have been intentional</u>." *Id*. (emphasis added). The term does not include "sloppy or overzealous lawyering[,]" and "no court has ever suggested that the term 'undue means' should be interpreted to apply to actions of counsel that are merely legally objectionable." *MCI Constructors*, 610 F.3d at 858.

Undue means and fraud are actions that require intent and scienter. The moving party alleging fraud under 9 U.S.C. § 10(a)(1) must show both a false representation of material fact and the intent to deceive. *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at \*30. TitleMax has conceded at oral argument that it does not have clear and convincing evidence that the 2020 Medley Declaration constitutes "undue means" or "fraud." (**Exhibit 2**; Tr. p. 39:8-13).

Further, TitleMax has admitted in briefing that, at most, the 2020 Medley Declaration is only a "potential forgery" that may contain "potentially perjurious statements[.]" *See* ECF No. 166-1, p 2. This is a far cry from TitleMax's initial pleadings,

which declared the 2020 Medley Declaration to be a "Forged Document" some forty times before multiple federal courts.

The day after receiving the Affidavit of Attorney Jeffery K. Peraldo (**Exhibit 3**), TitleMax backtracked, stating that it is an "open question" as to whether the 2020 Medley Declaration was a forgery. *See* **Exhibit 4**, n.2 (filing of TitleMax before Western District of Virginia). Now, TitleMax has further conceded in the District of South Carolina that it is not "suggest[ing] that counsel for [Plaintiff] has intentionally done anything improper in obtaining the 2020 Medley Declaration."[2] *See* **Exhibit 1** at 3, n.1.

Given these concessions, this Court need go no further, as TitleMax has already admitted that it lacks "clear and convincing evidence" of any "undue means" knowingly used by Plaintiff or Plaintiff's counsel. In fact, the great weight of the evidence is to the contrary, and there is no reasonable "open question," much less evidence that makes it "highly probable" that the Award was procured by undue means. At the end of the day, the <u>only</u> evidence TitleMax has on the issue of fraud and undue means is the 2026 Medley Declaration, which is replete with "I don't recall" type of statements. This does not meet the high burden, particularly in light of the evidence provided by Plaintiff.

Darren Medley returned the signed September 9, 2020 Declaration to Attorney Peraldo by email from dmedley@lifepushllc.com at 3:10pm on September 9, 2020. (**Exhibit 3**, Peraldo Aff.) Expert analysis concluded that "metadata confirms that the email

---

[2] In *TitleMax v. LeGrand*, 0:25-cv-01049-CMC (D.S.C.), TitleMax filed a Rule 59 motion, and in that motion, TitleMax referred to itself as the "Petitioner" and Mr. Legrand as the "Respondent," hence the brackets in the quote to avoid confusion as to which counsel TitleMax was referring.

from dmedley@lifepushllc.com attaching the signed 'Declaration of Darren Medley. Pdf' was sent to jeff@greensborolawcenter.com." (**Exhibit 5**, ¶ 4). There is no dispute that TitleMax's lawyer received a copy of the 2020 Medley Declaration on September 9, 2020.

The digital signature on the 2020 Medley Declaration is similar to other wet signatures of Medley from prior bankruptcy filings:

**2020 Medley Declaration Signature**       **Medley 2005 Bankruptcy Filing Signature**[3]

**Medley 2016 Bankruptcy Filing Signature**[4]

Regardless, in this and other awards, the 2020 Medley Declaration was not material to the outcome of the arbitration, as there was substantial additional evidence supporting liability including testimony from Plaintiff, a lien recording with the NCDMV, and two other former TitleMax employees that have presented evidence consistent with the 2020 Medley Declaration – one in a sworn deposition and another via two affidavits.

---

[3] Signature of Darren Medley contained in a 2005 bankruptcy filing. *See* ECF No. 1, p 2 of 31, 6:2005bk63928 (Bankr. W.D. Va.)

[4] Signature of Darren Medley contained in a bankruptcy filing. *See* Claim 9-1, Part 2 page 6 of 8 in Mr. Medley's 2016 Bankruptcy filing, case No. 6:2016bk60550 (Bankr. W.D. Va.)

Sworn deposition testimony from a former TitleMax employee, Taylor Pack, is consistent with the testimony of Plaintiff and is duplicative of the information in the 2020 Medley Declaration. **Exhibit 6** (Pack Dep.). Likewise, this testimony is consistent with and duplicative of another former employee, Jessica Crowley, who provided a sworn affidavit about her time working at TitleMax. ECF No. 93-4 (2020 Crowley Aff.). Ms. Crowley recently reconfirmed that her 2020 Affidavit is correct. **Exhibit 7**. Allowing the Motion to Amend would be futile, as there remains ample evidence in the record, even without the 2020 Medley Declaration, to confirm the Final Award.

## IV. TITLEMAX'S DEMAND FOR AN "INVESTIGATION" HAS NO BASIS IN LAW.

TitleMax cites no authority requiring the Court to launch an "investigation" in connection with a motion to vacate an arbitration award. To the contrary, the Fourth Circuit has stated that confirmation proceedings are "intended to be summary" in nature. *Taylor*, 788 F.2d at 225.

Relief under the FAA is in the nature of a motion. *Switzer*, 2010 U.S. Dist. LEXIS 7803, *11. In *Switzer*, the court held:

> As all relief under the FAA must be sought in the form of a motion, the notice pleading rules of Fed. R. Civ. P. 8 do not apply to proceedings to vacate or confirm an award. See *O.R. Secs., Inc., v. Professional Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988); *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994). Instead, the standard, which is established by the FAA, is ***whether the facts the movant has marshaled in his motion papers are sufficient to support vacating or confirming the award***. *Id*.

*Id*. at *11 (emphasis added).

Additionally, "[w]here the parties' filings sufficiently brief the issue of whether an

arbitration award should be vacated, modified, or corrected, the ruling may, as a general matter, be made on the basis of the record before the court, which includes the parties' briefings and memoranda and the arbitration record." *Trademark Remodeling, Inc. v. Rhines*, No. PWG-11-1733, 2012 U.S. Dist. LEXIS 109819, at *4 (D. Md., Aug. 6, 2012) (citing *O.R. Sec., Inc.*, 857 F.2d at 746; *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542 (5th Cir. 1987)).

Affirming the denial of a motion to vacate based on an allegation of fraud in *O.R. Sec., Inc.*, the Eleventh Circuit held:

> The manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court. If, as O.R. contends, the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award. The defending party would be forced to show that the movant could not prove any facts that would entitle him to relief from the arbitration award. *See Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102, 2 L. Ed. 2d at 84. If the defending party did not prevail on its motion to dismiss, the **proceeding to vacate the arbitration award would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial. This is the procedure which O.R. argues the district court should have applied**.
>
> **We disagree**. It is well-established that "the purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179, (11th Cir.1981). The policy of expedited judicial action expressed in section 6 of the Federal Arbitration Act, 9 U.S.C. § 6, would not be served by permitting parties who have lost in the arbitration process to file a new suit in federal court. The proper procedure, as discussed above, is for the party seeking to vacate an arbitration award to file a Motion to Vacate in the district court.
> . . .

**At the outset, we note that as the moving party, O.R. had the burden to set forth sufficient grounds to vacate the arbitration award in his moving papers.** The rules of notice pleading, Fed.R.Civ.P. 8, do not apply to a proceeding to vacate an arbitration award, as all relief must be sought in the form of a motion. *See supra*, slip opinion pp. 70-71, pp. __ __.

*O.R. Sec., Inc.*, 857 F.2d at 745-46, 748 (emphasis added).

This Court has before it the information it needs to rule, and TitleMax has failed to carry its burden by clear and convincing evidence.

## FACTS RELATED TO MOTION TO AMEND

In August 2020, Attorney Peraldo identified Darren Medley as a former TitleMax employee who might have knowledge about TitleMax's dealings with North Carolina residents. (**Exhibit 3**, Peraldo Aff. ¶ 4). Peraldo identified a phone number for Medley, (434) 446-3221, and Peraldo's contemporaneous notes reflecting Medley's contact information from that call are attached to his affidavit as Exhibit C. (*Id*. at ¶ 7).

On August 29, 2020, Peraldo spoke with Medley after confirming that Medley was not involved in the defense of claims brought against TitleMax by North Carolina borrowers. (*Id*. at ¶¶ 7-8). During the call, Medley provided information that Peraldo later placed in a draft declaration for Medley. (*Id*. at ¶¶ 7-8). Peraldo emailed Medley a copy of a draft declaration on September 9, 2020, and told Medley to review it carefully, and if accurate, sign it and return it by email. (*Id*. at ¶ 9 and Ex. E thereto).

Medley returned the signed declaration that day from dmedley@lifepushllc.com. (*Id*. at ¶ 10 and Ex. F thereto) (the complete email from dmedley@lifepushllc.com is available at **Exhibit 8**). The cellphone number in the signature block of

dmedley@lifepushllc.com was the same number Peraldo had used to call Medley to discuss his former employment with TitleMax. (**Exhibit 3** at ¶ 10 and Ex. F thereto).

On the day counsel for Plaintiff received Medley's Declaration, counsel for Plaintiff emailed counsel for TitleMax a copy, and informed TitleMax's lawyer, who is with the same firm that brought this Motion to Amend, that the Medley Declaration would be filed in all arbitrations and stressed that, if TitleMax wanted to take Medley's deposition, counsel for Plaintiff consented to the deposition. (*Id*. at 1G). TitleMax's attorney responded: "Thanks, received and will be back in touch on any depositions, etc." (*Id*. at 1H). TitleMax has never deposed Medley.

More than five years later, TitleMax submitted a declaration from Medley. Medley now claims that he "could not have signed that document" because of a series of personal tragedies, including his hospitalization from August 30, 2020 to September 6, 2020 due to complications with COVID-19, and the passing of his fiancée's daughter on September 4, 2020. Medley states:

- "I would not have communicated with any attorney that week in September 2020 about my work at TitleMax of Virginia, Inc."

- "I do not recall typing, creating, reviewing, of signing the declaration submitted in my name. I do not know how the declarations submitted in my name was typed, created, or signed. Prior to February 12, 2026, I have never seen the declaration submitted in my name."

- "I do not recall certifying that the declaration executed on September 9, 2020, was true and correct because I do not recall making that declaration."

(2026 Medley Dec. ¶¶ 28-29, 39).

The emails attached to the Peraldo Affidavit are consistent with the timeline of Medley's personal circumstances in August and September of 2020. According to Peraldo, as confirmed by his email, he and Medley first spoke on August 29, 2020, before Medley's hospitalization. (**Exhibit 3**, ¶ 8). Peraldo and Medley next spoke and corresponded by email on September 9, 2020, after Medley's release from the hospital. (*Id*. at ¶ 9). Indeed, Peraldo's email of September 9, 2020 states: "Mr. Medley, again I am glad you are ok[,]" indicating that Peraldo and Medley had spoken and that Medley told Peraldo about his health issues and that Medley told Peraldo he was then ok. (*Id*. at ¶ 9 and Ex. F thereto).

While Peraldo has produced all of his communications with Medley, the circumstances surrounding TitleMax's obtaining the 2026 Medley Declaration are unknown. TitleMax obtained a subpoena to compel Medley to testify at an arbitration hearing. Based on TitleMax's unverified brief, an "investigator" acting on behalf of TitleMax located Medley and presented Medley with a copy of the 2020 Declaration. There is no evidence before this Court describing the interaction between Medley and the "investigator," or anyone else acting on behalf of TitleMax. This is not, however, the only witness TitleMax has confronted via a private investigator, and evidence does exist as to that interaction.

Jessica Crowley, a former TitleMax employee, provided an affidavit in 2020 that discussed her interactions with prospective borrowers from North Carolina when she was employed by TitleMax. The 2020 Crowley Affidavit is available at ECF No. 93-4. In March 2026, Crowley and her daughter were approached by a private investigator, on behalf of TitleMax's lawyers, and Crowley has provided a new affidavit discussing these

interactions. *See* **Exhibit 7**. On March 4, 2026,[5] a man came to Crowley's home and spoke with her daughter. *Id*. at ¶ 2. The man identified himself as a former FBI agent, and asked Crowley's daughter if she wanted to see his badge. *Id*. The man left a letter for Crowley, which was from TitleMax's lawyer, Erin Harrigan. *Id*. "The letter was scary to [Crowley], as it seemed to say that [she] was involved in some sort of fraud, which is not true." *Id*.

The investigator approached Crowley's home again on Saturday, March 7, 2026. *Id*. at ¶ 3. As Crowley and her daughter were leaving home, Crowley saw a white BMW parked on the edge of her yard. *Id*. As Crowley began to leave, a man approached her vehicle, and Crowley told the man he needed to leave. *Id*. Instead of leaving, the man asked if she was Jessica Crowley. *Id*. The man "said something about an affidavit and he thought it was forged with my name on it and he needed to meet with me." *Id*. Crowley told the man that he had walked past no trespassing signs and he needed to leave. *Id*. "He refused [to leave] and mentioned that he is friends with Chesterfield County, South Carolina Sheriff Cambo Streater." *Id*. The man "reached his hand over like he was going to touch [Crowley's] car, and [Crowley's] daughter reacted to make a sound." *Id*. Crowley then rolled her window up and left, and she later drove back by to confirm the man left. *Id*.

In her 2026 Affidavit, Crowley confirmed that the statements she made in the 2020 Affidavit "were and are true." *Id*. at ¶ 4. After Crowley signed the 2020 Affidavit, she was sued by TitleMax. *Id*. Crowley stated that "[t]he process of going through that lawsuit

---

[5] The "Emergency Motion" hearing in this Court was scheduled for the next morning (March 5, 2026).

was very traumatic for me." *Id*. After the lawsuit was dismissed, Crowley has "not had any further dealings with TitleMax" and she does not "have any reason to have problems with TitleMax." *Id*.

TitleMax has not proffered any evidence regarding the circumstances under which it obtained the 2026 Medley Declaration.

<u>**ARGUMENT**</u>

TitleMax's Motion to Amend seeks to add a new basis to its motion to vacate the Final Award – Fraud. The Motion to Amend should be denied as futile. TitleMax has proffered no clear and convincing evidence that undue means or fraud exists. Moreover, even assuming a fraud existed, TitleMax cannot establish that it was material to the outcome of the arbitration, or that TitleMax acted with due diligence to discover it.

TitleMax has cited no authority that it is entitled to an "investigation." Its request only underscores that it lacks clear and convincing evidence of fraud or undue means, and it has all but admitted as such in oral argument before this Court and in its most recent round of briefing. Finally, Rule 15 is not applicable to motions to vacate, and TitleMax cannot amend its petition.

### I. THE EVIDENCE DOES NOT SUPPORT TITLEMAX'S CLAIMS OF FRAUD, FORGERY OR FABRICATION.

To vacate on the grounds of fraud or undue means, the party seeking to set aside the award must establish that the fraud or undue means was: "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Weirton Med. Ctr., Inc. v. Qhr Intensive Res., LLC*, 682 F. App'x 227, 228 (4th Cir. 2017). All three elements must

be established. *Portis v. Ruan Transp. Mgmt. Sys.*, 7:15CV00118, 2016 U.S. Dist. LEXIS 174780, at *6 (W.D. Va. Dec. 19, 2016) (addressing alleged perjury of a witness).

Clear and convincing evidence is "of such weight that it produces in the mind of the trier of fact a firm belief or conviction, <u>without hesitancy,</u> as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at *29-30 (emphasis added). When it comes to nondisclosure of evidence, i.e., the authenticity of the 2020 Medley Declaration, to establish clear and convincing evidence it must be established that the party "made a deliberate decision to withhold a known material" item of evidence. *Id*. In short, to meet this high standard, TitleMax must have clear and convincing evidence of an "underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute it either." *Id*.

TitleMax has not even convinced itself "without hesitancy" as to the truth of the allegations it seeks to establish. To the contrary, TitleMax expresses hesitancy now at every turn. When asked by this Court if TitleMax was seeking "a full-blown evidentiary hearing on fraud[,]" TitleMax said yes, because "[w]e have a clear and convincing evidence standard that we have to meet and <u>we think we need a hearing in order to be able to make that showing of clear and convincing evidence</u>[.]" (Tr. p. 39:8-13) (**Exhibit 2**) (emphasis added). As to the element of scienter in fraud, TitleMax has further conceded that it is not "suggest[ing] that counsel for [Plaintiff] has intentionally done anything improper in obtaining the 2020 Medley Declaration." *See* **Exhibit 1** at 3, n. 1. TitleMax's latest rounds of briefing expressly acknowledges that the 2020 Medley Declaration is a "potential

forgery," and while Plaintiff thinks the claim of forgery are unfounded, "potential" is not clear and convincing evidence that would convince a trier of fact without hesitancy that TitleMax's allegations are true.

Accordingly, because even TitleMax is not convinced as to the truth of its allegations, this Court should deny the Motion to Amend as futile and confirm the Award.

A. TitleMax Cannot Establish By Clear and Convincing Evidence that the Medley Declaration is a "Fraud."

Proving fraud or undue means by clear and convincing evidence is onerous. *TVL Int'l* shows why. There, the defendant moved to set aside a $1.7 million arbitration award, alleging corruption, fraud, or undue means under 9 U.S.C. § 10(a)(1). *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at *27-28. The arbitration arose out of a trade secret dispute and violation of an NDA, in which the defendant was alleged to have stolen intellectual property. *Id*. at *6-7. The arbitration panel found for plaintiff, and as part of the damages award, relied on an agreement that the plaintiff had with a non-party that had a license to manufacture and sell the plaintiff's version of the product. *Id*. at *7-8. The plaintiff, however, did not disclose that the agreement with the non-party had been terminated, meaning plaintiff would in fact have received no revenue from this non-party even if the defendant had not misappropriated the IP. *Id*. at *8-9.

The defendant argued fraud or undue means because, among other reasons, counsel for the plaintiff did not turn over in discovery the termination letter from the non-party to the defendant, and represented to defendant's counsel that he had "given everything we could find that was anywhere close to relevant[.]" *Id*. at *30-31. The defendant could not

establish fraud by clear and convincing evidence because the plaintiff's CEO submitted a declaration which stated that the termination letter was not withheld in bad faith, but was not provided because he did not believe it was relevant. *Id*. at *32. Counsel for plaintiff also stated "that neither he nor his co-counsel or anyone at their firms knew of the early termination letter until months after final briefs were submitted." *Id*. at 33. The court held that "[w]hile the early termination letter was relevant to the arbitration proceeding, these facts alone do not show, by clear and convincing evidence, that [the plaintiff] **purposefully attempted to deceive the [arbitration] panel and [the defendant], which is a necessary predicate for finding fraud and undue means**." *Id*. (emphasis added).

Ultimately, "[w]hile [the defendant] has provided a motive for why [the plaintiff] would have withheld the letter, [the defendant] has been unable to provide sufficient evidence necessary to show by clear and convincing evidence that [the plaintiff] made a conscious and deliberate bad faith decision to deceive." *Id*. at *37. TitleMax, likewise, has not and cannot provide evidence necessary to show by clear and convincing evidence that Plaintiff or Plaintiff's counsel made a conscious and deliberate bad faith decision to deceive.

To the contrary, the heavy weight of the evidence establishes Medley spoke to Mr. Peraldo on August 29, 2020 and September 9, 2020, and Medley returned an executed Declaration by email September 9, 2020. TitleMax concedes that, "on the face of the

document, nothing suggests it is inauthentic[.]"[6] (ECF No. 166-1 at 10). As a result, even if it were "inauthentic[,]" Plaintiff's counsel would not know. Medley states throughout his 2026 Declaration that he does not recall or remember. For example, "I did not recall making the statements in the document dated September 9, 2020 to Andrew (Drew) Brown or anyone affiliated with the Greensboro Law Center." (ECF No. 157-1 at 178; Medley 2026 Dec. ¶ 15). Medley's lack of current recall does not mean Medley did not sign the 2020 Declaration. The 2026 Declaration obtained by TitleMax falls short of saying "I did not sign" the 2020 Declaration. Instead, Medley says that "I knew that I could not have signed that document." (*Id*. at ¶ 21). Other examples of Medley's signatures, which are included above, appear consistent with the signature in the 2020 Medley Declaration.

Peraldo's communications with Medley occurred on August 29, 2020, prior to Medley's hospital admission, and September 9, 2020, after his hospital discharge; meaning that Medley did not speak to Peraldo during the week he was hospitalized, which is not inconsistent with Medley's new declaration. (**Exhibit 3**). Further, the September 9, 2020 email from Peraldo to Medley (*Id*. at Ex. E) states: "Mr. Medley, again I am glad you are ok," consistent with Mr. Medley's report of dealing with illness between the August 29, 2020 and September 9, 2020 communications. Far from establishing fraud by clear and

---

[6] TitleMax previously represented to the Western District of Virginia and the Eastern District of North Carolina that "on the face of the document, nothing suggests it is a forgery." *See TitleMax of South Carolina, Inc. v. Whitney Chavis*, 7:26-cv-00010-M-KS (E.D.N.C), ECF No. 16-1 at 7.

convincing evidence, the evidence supports the conclusion that Medley did speak with Peraldo, and did execute and return the September 9, 2020 Declaration.

Now, after being contacted by a TitleMax "investigator" more than five years later, Medley says he does not recall the 2020 Declaration. A witness' lack of recollection or a witness making some inconsistent statements many years later, is not evidence of fraud, much less clear and convincing evidence of it. Tellingly, there is no record evidence of what TitleMax said to Medley, how Medley's 2020 Declaration was presented to him, nor who this "investigator" even is. As noted in the fact section above, another former TitleMax employee has been contacted by an "investigator" hired by TitleMax, and it could not be described as a pleasant experience. (**Exhibit 7** at ¶ 4).

TitleMax's only item of evidence is the equivocal 2026 Medley Declaration, which falls far short of establishing intentional bad faith or misconduct of Plaintiff or Plaintiff's counsel.

B. <u>TitleMax cannot establish that any alleged fraud was not discoverable upon the exercise of due diligence</u>.

"Whether a party exercised 'due diligence' is an individual inquiry that requires a court to consider the totality of the circumstances." *TVL Int'l*, 2022 U.S. Dist. LEXIS 80607, at \*37. Here, TitleMax had ample opportunity to discover any purported "fraud" or to test the veracity of the 2020 Medley Declaration long before the arbitration hearing. Accordingly, TitleMax cannot establish that it acted with due diligence.

In *TVL Int'l*, the court also found that the defendant had not acted with due diligence, as it could have discovered the existence of the termination notice at many stages of the

arbitration process. *Id*. at *37-40. In that case, the defendant acknowledged that it received a copy of the license agreement, which contained the termination provision that was ultimately exercised by the non-party, approximately six months before the arbitration hearing. *Id*. at *37. The defendant argued that "[b]ecause so many documents were produced, . . . absent [the plaintiff] notifying [it] of the early termination clause, [the defendant] had no reason to focus on the provision." *Id*. In rejecting the argument, the court held that the "arbitration rules did not prevent [the defendant] from learning of the early termination letter." *Id*. To the contrary, the defendant "had the opportunity to ask [the plaintiff's CEO] on multiple occasions whether [the non-party] exercised its early termination rights," but never did. *Id*.

The *TVL Int'l* court, in finding a lack of due diligence, quoted from a Sixth Circuit case, which provided as follows:

> Moreover, a plaintiff cannot successfully make out a prima facie claim of fraud if the fraud was discoverable upon the exercise of due diligence prior to or during the arbitration. Pontiac Trail has failed to show that it exercised due diligence in attempting to discover the alleged fraud prior to the arbitration. Pontiac Trail admits that the disputed documents were obtained from independent sources, not PaineWebber, and has given no reason why it could not have reasonably obtained them prior to or during the arbitration hearing.

*Id*. (quoting *Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.*, No. 9201972, 1993 U.S. App. LEXIS 20280, 1993 WL 288301, *4 (6th Cir. 1993)).

Likewise, here, TitleMax can articulate no reason why it could not have spoken with Medley—its former employee—after receiving the 2020 Declaration on September 9, 2020. TitleMax does not argue, as it cannot, that it lacked the ability to compel Medley to

a hearing and to take his testimony under oath. Arbitrators have the ability to compel non-parties to appear and testify. 9 U.S.C. § 7. Indeed, TitleMax, in one arbitration, obtained a subpoena, and according to its brief, located and served Medley.

TitleMax's lawyer (with the same firm that filed this Motion to Amend) was provided with a copy of the Medley Declaration the day it was received by counsel for Plaintiff. (**Exhibit 3** at ¶ 11). In the email serving a copy of the Medley Declaration, TitleMax's lawyer was informed that "[w]e obtained this declaration from TitleMax's former employee today. <u>I do plan to use it in all arbitrations</u>." (*Id*. at Ex G) (emphasis added). Next, TitleMax was told that "[i]f you want to take his deposition, I am giving you plenty of notice to do so. <u>We don't oppose any effort you make to subpoena TitleMax's own former employee. We very much want you to have the chance to examine these witnesses under oath</u>." (*Id*.) (emphasis added). Later that same day, TitleMax's attorney responded with: "Thanks, received and will be back in touch on any depositions, etc." (*Id*. at Ex. H). TitleMax did not contact Plaintiff's counsel about a deposition of Medley.

Had the 2020 Medley Declaration in fact been a forgery, the time to discover that would have been near the time when Medley returned it. TitleMax's apparent position that counsel for hundreds of claimants pursuing claims against TitleMax obtained a fraudulent declaration, and then on the same day provided the fraudulent declaration to counsel for TitleMax, encouraging TitleMax to take a deposition of the fraudster, strains credulity. Now, more than five years later, Medley purports not to recall. (2026 Medley Dec. ¶ 15). It is entirely possible that Medley does not recall executing the declaration, and also entirely likely that he did, in fact, execute the declaration. Had Medley been deposed, or

had TitleMax simply contacted its own former employee, it could have discovered that he did not execute the declaration (if that were the case) or that the declaration was false (if that were the case).

TitleMax's position that the statements in the 2020 Medley Declaration are "forged" or "fraudulent" does not comport with TitleMax's conduct. Medley was previously employed by TitleMax and was discussing the nature of his employment with TitleMax. If what Medley described in his 2020 Declaration was inconsistent with TitleMax practices and/or policies, TitleMax would have been in the best position to know that. Yet TitleMax did nothing for years to address the (allegedly) inaccurate statements in the 2020 Medley Declaration.

TitleMax did not act with due diligence. Its Motion is futile and should be rejected. *See Weirton Med. Ctr.*, 682 F. App'x at 228 (holding that party seeking vacatur on alleged fraud "cannot complain that [] witnesses tried to conceal something that it never sought to discover"); *Portis*, 2016 U.S. Dist. LEXIS 174780, at *8 ("The purpose of requiring fraud to be newly discovered before vacating an arbitration award on that ground is to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings.")[7]

---

[7] At best, TitleMax's efforts here is an attempt to raise "newly discovered" evidence, akin to a Rule 60 Motion, which is not permitted under the FAA. *Tecnocap, LLC v. United Steel*, No. 5:20-CV-82, 2021 U.S. Dist. LEXIS 255561, at *18-19 (N.D.W. Va. Feb. 19, 2021) (collecting authorities).

C. <u>TitleMax Cannot Establish Any Fraud Materially Related to an Issue in the Arbitration</u>.

TitleMax cannot establish that the Medley Declaration materially related to an issue in the arbitration.

Plaintiff Jones' Final Award, issued on January 29, 2025, did not cite to the Medley Declaration. ECF No. 99-1 at 13-26. The Interim Award, which established liability, also did not cite the Medley Declaration. ECF No. 99-1 at 1-12. There is no reference to former employees of TitleMax. Instead, the Arbitrator found that:

> The summary disposition record supports the conclusion that the activity which took place in North Carolina, including the telephone discussion with Claimant, lien recording upon Claimant's car with the North Carolina DMV and payments sent by Claimant from North Carolina are sufficient to support a finding that contractual activities related to the loan agreement took place in North Carolina and that the loan agreements are not enforceable pursuant to N.C.G.S. 53- 190(a) and (b). *See Troublefield v. AutoMoney, Inc.,* 2022 NCCOA-497, No. COA21-421 (July 2022) at 23-25, 4 1; *Wall, et.al. v. AutoMoney, Inc.,* 22-NCCOA-498 (July 2022). at 18. Pursuant to this clear authority, neither *lex loci contractus,* nor *lex loci delicto,* nor Virginia as a choice of law is available to Respondent in defense to Claimant's N.C.G.S. l5-190 claim. North Carolina law provides that a violation of a public policy statute, such as N.C.G.S. 53-190(a) and (b) overrides the choice of law provision m1d makes the agreement void. *See Troublefield,* at 27.

*Id*. at 5.

On Plaintiff's testimony alone, liability under the NCCFA was fixed, regardless of any reliance on the 2020 Medley Declaration:

> **By discussing its business and the terms of contracts by phone with North Carolina residents, Defendant discussed and negotiated loans within North Carolina as defined by N.C. Gen. Stat. § 53-190**. Therefore, we conclude Defendant violated N.C. Gen. Stat. § 53-190, and in turn, violated a fundamental public policy of North Carolina. As such, we hold the choice of law provisions within Defendant's loan agreement and its

acknowledgement and waiver form is void as a matter of public policy and the trial court properly denied Defendant's Rule 12(b)(6) motion.

*Troublefield v. AutoMoney, Inc.*, 284 N.C. App. 494, 510, 876 S.E.2d 790, 802-03 (N.C. App. 2022) (emphasis added).

As noted, sworn deposition testimony from a former TitleMax employee, Taylor Pack, is consistent with the testimony of Plaintiff and is duplicative of the information in the 2020 Medley Declaration. *See* ECF No. 55-54 (Pack Deposition). Likewise, this testimony is consistent with and duplicative of another former employee, Jessica Crowley. *See* ECF No. 93-4 (Crowley Affidavit). Ms. Crowley recently reconfirmed that her 2020 Affidavit is correct. (**Exhibit 7**). In short, the facts found by the Arbitrator irrespective of the 2020 Medley Declaration were sufficient to find liability under the NCCFA.

Accordingly, even if TitleMax could establish the falsity of the 2020 Medley Declaration by clear and convincing evidence (it cannot) and that it somehow could not have deposed or spoken with its former employee Medley (it certainly could have), TitleMax cannot establish that the inclusion of the 2020 Medley Declaration had a material impact on the issues in the Arbitration.

## II. FURTHER INVESTIGATION IS NOT WARRANTED.

Counsel for Plaintiff has turned over its email communications with Medley. TitleMax has not presented any evidence that the emails are not authentic and were not

actually sent to and from Mr. Medley.[8]  TitleMax does not cite a case in which a further investigation was ordered in the context of a motion to vacate an arbitration award.[9] Broadly speaking, the cases cited by TitleMax involve a party knowingly submitting forged or false evidence in support of a claim or defense in a lawsuit.

The Eastern District of North Carolina has addressed the scope of discovery in a post-arbitration action to vacate an award.  *See Shepherd v. LPL Fin. LLC*, No. 5:17-CV-150-D, 2019 U.S. Dist. LEXIS 43614, at *6-8 (E.D.N.C. Mar. 18, 2019).  "Due to the strong federal policy favoring the finality of arbitration awards, <u>discovery in post-arbitration judicial proceedings should be permitted only in limited circumstances</u>—where a showing has been made that the discovery sought is <u>relevant and necessary to the court's determination of the petition</u>."  *Id*. at *6 (emphasis added).

In *Shepherd*, the plaintiffs sought vacatur "on the ground it was 'procured by corruption, fraud, or undue means' due to Defendant's failure to produce relevant documents as ordered by the [arbitration] panel.'"  *Id*. at *7 (alteration original).  The

---

[8] Arbitrators have permitted TitleMax discovery in these ongoing matters.  *See* **Exhibit 9** (order in *Katari Miller v. TitleMax*).  TitleMax has refused to participate in discovery, and has not responded to Claimant's request for production of documents in that matter. TitleMax, however, chose not to participate in that discovery.

[9] Though TitleMax argues to the Court (Am. Mot. at 25-28) that the Court may conduct an independent investigation into these matters, the cases it cites in support of that proposition did not arise in the context of arbitration vacatures.  *Torres v. Universal Music Grp. N.V.*, No. 24-cv-05323 (LJL), 2025 U.S. Dist. LEXIS 186977 (S.D.N.Y. Sept. 23, 2025) arose out of an arbitration, but the plaintiff in that case filed a lawsuit, and attached exhibits the court subsequently found to be forged.  Neither the FAA nor vacatur were discussed by the court.  And permitting discovery and conducting evidentiary hearings would be antithetical to the "expeditious and summary hearing" envisioned for "arbitration proceedings." *O.R. Sec., Inc.*, 857 F.2d at 747-48.

plaintiffs further contented that "there is 'no way to know the extent of Defendant's [discovery] failures' and urge[d] the court to compel Defendant to provide discovery in this case." *Id*. The court rejected the request. There, the plaintiffs "fail[ed] to explain the particular relevance of the documents" and as such, even though the defendants failed to comply with the arbitration panel's order to produce documents, the plaintiffs did not meet the burden in establishing how the "documents may have affected the outcome of the arbitration proceeding[.]" *Id*. at *8. The court held: "Absent a showing that the discovery sought is relevant and necessary to the court's determination of Plaintiff's petition, allowing discovery into matters that occurred in the underlying arbitration proceeding would impermissibly undermine the arbitral process." *Id*. (emphasis added).

TitleMax has likewise failed to meet this standard. The 2020 Medley Declaration was, at most, cumulative evidence of TitleMax's activities in North Carolina. TitleMax itself concedes that it is now an "open question" as to whether the 2020 Medley Affidavit was "forged" (**Exhibit 4** at 2, n.2). Even TitleMax's "open question" concession overstates the evidence of a "forgery", as Medley's 2026 Declaration is replete with "I don't recall" type evidence. This speculative evidence does not entitle TitleMax to the full scope of discovery of a typical civil action. Instead, the matter at this late stage is only before this Court for the limited purposes provided for in 9 U.S.C. §§ 9 and 10.

This Court has the information needed to address this issue. Counsel for Plaintiff has provided the email correspondence between its retired partner and Medley, showing the provenance of the Declaration. Accordingly, this Court should reject TitleMax's request for further investigation, as unnecessary under the circumstances and beyond the

scope of FAA review.

### III.    A MOTION TO VACATE MAY NOT BE AMENDED.

Even setting the merits of TitleMax's dubious "Forged Document" allegations aside, TitleMax is not permitted to amend a motion to vacate, and the Motion to Amend should be denied.[10]

A motion to vacate an arbitration award is not a "pleading" subject to amendment under Rule 15(a).  *See Loch View LLC v. Seneca Ins. Co.*, No. 21-1008, 2022 U.S. App. LEXIS 11105, at *4 (2d Cir. Apr. 25, 2022) (expressing doubt that Rule 15 would apply to an amended pleading).  The Southern District of New York held explicitly that Rule 15 does not permit the amendment of motions to vacate.  *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL), 2024 U.S. Dist. LEXIS 160367, at *55 (S.D.N.Y. Sept. 6, 2024).  The Fourth Circuit has held that "decisions of the Second Circuit . . . are preeminent in arbitration law[.]"  *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 456 (4th Cir. 1997).

---

[10] TitleMax, in its Motion to Amend, states that motions to vacate "function as case initiating pleadings in post-arbitration proceedings and are accordingly, treated in the same manner as complaints under Rule 15[,]" and cites the reversed case *of Dewan v. Walia*, RDB-11-02195, 2012 U.S. Dist. LEXIS 108998, at *25 (D. Md. Aug. 3, 2012), *vacated and remanded*, 544 F. App'x 240 (4th Cir. 2013) (district court erred in failing to apply the FAA).  This is not the holding of *Dewan*.  In that case, the court was applying Maryland's Uniform Arbitration Act, not the FAA.  *Id*. at *25.  The court did not address at all whether Rule 15 applies to a motion to vacate.  Instead, the court addressed whether the plaintiff followed the proper procedure under Rule 15 generally.  Unlike here, the defendant in that case did not argue that allowing the amendment was futile nor that the defendant would be unduly prejudiced.  *Id*. at *22.  Further, under the MUAA, both the initial complaint and the amended complaint were timely filed.  *Id*. at *26.

In *Eletson Holdings*, the court analyzed the possible application of Rule 15 to a motion to vacate an arbitration award, and concluded that "Rule 15 does not apply to motions to vacate." *Eletson Holdings*, 2024 U.S. Dist. LEXIS 160367, at *55. The court noted that the Federal Rules of Civil Procedure apply to FAA proceedings only "to the extent applicable . . . except as [the FAA] provide[s] other procedures." *Id*. at *56 (alterations original) (quoting Fed. R. Civ. P 81(a)(6)(B)). Rule 15, "[b]y its terms . . . is limited to 'pleadings.'" *Id*. The FAA requires that a "proceeding to vacate, modify, or correct an award . . . is commenced by motion." *Id*. (citing 9 U.S.C. § 12). "It is not commenced by a pleading." *Id*. There is a "clear and consistent distinction between pleadings and motions" under the Federal Rules of Civil Procedure. *Id*. at *56-57.

The court reasoned, that "Rule 15 fits uncomfortably with Section 12 motions to vacate[,]" as Rule 15 contemplates an amendment after responsive pleading or a motion, but a response to a motion to vacate is neither a responsive pleading nor a motion. *Id*. at *57. More importantly to the court, "the notion of granting amendment 'freely . . . when justice so requires' and the law under Rule 15(a)(2) sits uneasily with the objective under the FAA that arbitration awards be confirmed or vacated in an expedited manner."[11] *Id*.

_____

[11] The *Eletson Holdings* court permitted the doctrine of "equitable tolling" to allow an otherwise untimely motion to vacate, but as discussed below, even if that doctrine were available in the Fourth Circuit, it would not apply to these facts. The *Eletson Holdings* court said that equitable tolling could exist "only when the party seeking to avoid" the FAA's three-month statute of limitation "shows that it has been pursuing its rights diligently and some extraordinary circumstances stood in [its] way to prevent timely filing." *Id*. at 44. The court recognized the doctrine is appropriate where the party that engaged in the fraud, undertook to conceal it. *Id*. at 47. That is certainly not the case here, as TitleMax made no effort to depose Medley upon receipt of the 2020 Medley Declaration.

Because Rule 15 does not apply, TitleMax's proposed amended motion to vacate does not relate back to the filing of its initial motion to vacate and is therefore untimely. Plaintiff's Final Award was issued on January 29, 2025. (*See* ECF No. 99-1). TitleMax did not file its motion to amend to allege fraud until March 13, 2026, more than thirteen months later. (ECF No. 227).

### IV. EQUITABLE TOLLING DOES NOT APPLY TO TITLEMAX'S ALLEGATIONS OF FRAUD.

TitleMax was required to raise any basis for vacating the Final Award within three months after the Final Award was filed or delivered. *See* 9 U.S.C. § 12. TitleMax did not timely raise its "fraud" theory, and the Motion to Amend should be denied. To the extent TitleMax argues in reply that it should be permitted to "equitably toll" the statute of limitations in the FAA, that should be rejected.

The Fourth Circuit stated that any exception to the three-month statute of limitations in the FAA based on a party establishing that it exercised due diligence such that there should be "equitable tolling" is questionable. *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). *Taylor* stated that "[t]he existence of any such exceptions to § 12 is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law exceptions because there was no common-law analogue to enforcement of an arbitration award." *Id*. (citing *Florasynth v. Pickholz*, 750 F.2d 171, 174-77 (2d Cir. 1984) (three-month limit is absolute); *Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 601 (8th Cir. 1981) (due diligence exception questionable, but due diligence did not appear on facts of this case) *see also Brooks v. Ferris Baker Watts, Inc.*, No. 3:05CV156, 2006 U.S.

Dist. LEXIS 99805, at *7 (W.D.N.C. Aug. 25, 2006) (collecting authorities addressing "skepticism that any such exceptions" for due diligence or tolling exist).

Even if an "equitable tolling" exception existed, TitleMax cannot establish that it acted with due diligence. Counsel for claimants in these title loan matters obtained the 2020 Medley Declaration on September 9, 2020, via the email of dmedley@lifepushllc.com. That very day, counsel for claimants emailed counsel for TitleMax, Jason Evans, a copy of the 2020 Medley Declaration, and was told by Plaintiff's counsel that the 2020 Medley Declaration would be used in every arbitration. (**Exhibit 3G**). TitleMax's attorney acknowledged receipt of the 2020 Medley Declaration, and told Plaintiff's counsel he would be in touch regarding depositions. (*Id*.) TitleMax made no effort to schedule a deposition of Medley and apparently did not even interview Medley. TitleMax's failure to act for years is not "due diligence."

Accordingly, this Court should also deny TitleMax's Motion to Amend, because: (1) Rule 15 does not apply to motions to vacate arbitrations awards; and (2) even if "equitable tolling" existed, TitleMax did not act with due diligence after receiving the 2020 Medley Declaration more than five years ago.

## **CONCLUSION**

For the reasons set forth herein, TitleMax's Motion to Amend should be denied.

Respectfully submitted this 2nd day of April, 2026

/s/*Stephen T. Inman*
Stephen T. Inman
N.C. Bar No. 26913
Kevin A. Rust
N.C. Bar No. 35836
James R. Faucher
N.C. Bar No. 31514
Andrew H. Brown
N.C. Bar No. 284050

**FOR THE FIRM:**

**Brown, Faucher, Peraldo & Benson, PLLC**
822 N. Elm St., Suite 200
Greensboro, NC 27401
Tel: (336) 478-6000
Fax: (336) 273-5597
stephen@greensborolawcenter.com
james@greensborolawcenter.com
drew@greensborolawcenter.com
kevin@greensborolawcenter.com

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing document complies with the word count limits as

established by this Court's Order.

*/s/ Stephen T. Inman*
Stephen T. Inman
N.C. Bar No. 26913
Attorney for Plaintiff

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 478-6000 (telephone)
(336) 273-5597 (facsimile)
stephen@greensborolawcenter.com